# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

|  |  |  |
|---|---|---|
| **CONNIE STRICKLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | **NO.  4:10-CV-149-HLM** |
| | ) | |
| **NORFOLK SOUTHERN** | ) | |
| **RAILWAY COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>CONSOLIDATED PRETRIAL ORDER</u>

1.

There are no motions or other matters pending for consideration by the court except as noted:

**The parties will file motions *in limine* on various matters and will file trial briefs prior to trial.**

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

1

Plaintiff intends to depose Dr. Piller for use at trial.

Plaintiff intends to depose Mr. Brig Burgess for use at trial.

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**There is no question as to jurisdiction or venue. Jurisdiction is proper under 28 U.S.C. § 1331 because this is a Federal Question arising under the Federal Employers Liability Act, 45 U.S.C. § 51 *et. seq.*, which allows jurisdiction in this Court pursuant to 45 U.S.C. § 56. Venue is proper in this Court under 28 U.S.C. § 1391 and 45 U.S.C. § 56 because a substantial part of the events giving rise to the claim occurred in this district.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiff:**         **Michael J. Warshauer**
**Warshauer Law Group, P.C.**
**3350 Riverwood Pkwy**
**Suite 2000**
**Atlanta, Georgia 30339**
**(404) 892-4900**

**Also representing Plaintiff will be Trent Shuping, from the same firm and with the same contact information as Mr. Warshauer.**

**Defendant:**      **Daryl G. Clarida**
**Hall, Bloch, Garland & Meyer, LLP**
**Suite 500**
**900 Circle 75 Parkway**
**Atlanta, GA 30339-3099**
**(678) 888-0036**

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**Plaintiff is entitled to open and close.**

7.

The captioned case shall be tried **(X)** to a jury or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**The parties do not request for the trial to be bifurcated.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general voir dire questions is a matter of courtroom policy which shall be established by each judge.

11.

State any objections to Plaintiff's voir dire questions:

Question 15: Misstates what jury is tasked to do in this case and also invades the province of the Court to instruct the jury on law to apply.

State any objections to Defendant's voir dire questions:

Question 3. Object to referring to Sycondie Mudd as Connie's ex-wife. No      objection to asking if anyone knows her.

27. Objection. Misstates the law. This is a Safety Appliance Act case. It is    strict liability. As the 5th Circuit's pattern jury instruction advises,

"The defendant is liable for the damages caused by the violation, although the *also e.g. O'Donnell v. Elgin, J. & E. R. Co.***, 338 U.S. 384, 390 (U.S. 1949) ("**. . . a failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability -- a liability that cannot be escaped by proof of care or diligence.")

State any objections to the voir dire questions of the other parties, if any:

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**None.**

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed

under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

The legal issues to be tried are as follows:

**<u>For the Plaintiff:</u>**

Plaintiff states that the only issues in this case are factual issues to be decided by the jury.  To the extent this paragraph requires that factual issues be identified, Plaintiff states that the following factual issues will be

determined by the jury:

1.  Did Defendant use a hand brake that was inefficient in violation of the Safety Appliance Act because it failed to release upon operation of the quick release, failed to release upon Plaintiff's reasonable effort to turn the wheel, and only released in response to extra force?

2.  Did the violation of the Safety Appliance Act contribute in whole or in part to the injury suffered by the Plaintiff?

**3.**  What amount of money is necessary to compensate Plaintiff for all damages, caused in whole or in part, by the Defendant's violation of the Safety Appliance Act commonly referred to as the Handbrake Act?

**For the Defendant:**

**SAA (Safety Appliance Act)**

(a)  Whether Defendant violated the Safety Appliance Act.

(b)  Whether Defendant's violation of the Safety Appliance Act, if any, caused any of Plaintiff's alleged injuries.

(c)  If so, what portion of Plaintiff's injuries was caused by Defendant's violation of the Safety Appliance Act.

(d)     Whether Plaintiff's conduct was the sole cause of his injuries.

(e)     Whether Plaintiff has mitigated his damages.

(f)     What amount of damages, if any, will compensate Plaintiff for the damages, if any, caused by the Defendant.

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been

reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

<div align="center">19.</div>

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants,

the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**For the Plaintiff:**

Dr. Piller's First Deposition: 4:6-8, 12-14; 5:14-8:24; 10:12-11:9; 13:17-17:18; 22:21-23; 23:23-28:14; 31:18-32:2;

Dr. Christopher Piller – Second Deposition Pending

Brig Burgess – Deposition Pending

**For the Defendant:**

John David Engle:  p. 5, l. 11-22; p. 33, l. 11 – p. 34, l. 1; p. 40, l. 19 - p. 41, l. 2; p. 59, l. 17-24; p. 60, l. 4-7.

Michael P. Bernot, MD:    p. 9, l. 8-11; p. 12, l. 16; p. 13, l. 5; p. 21, l. 19 – p. 23, l. 5; p. 30, l. 10-17; p. 33, l. 3-14; p. 35, l. 15-25; p. 40, l. 5 – p. 41, l. 1; p. 45, l. 9 – p. 46, l. 9; p. 46, l. 25 – p. 47, l. 11.

Christopher Piller, MD:   p. 4, l. 6-14; p 5, l. 14 – p. 9, l. 22; p. 11, l. 3 – p. 12, l. 13; p. 13, l. 17 – p 15, l. 12; p. 16, l. 18 – p. 17, l. 2; p. 18, l. 5-24; p. 19, l. 10-13; p. 19, l. 23-25; p. 21, l. 7-8; p. 21, l. 13 – p. 22, l. 8; p. 22, l. 21 – p. 23, l. 12; p. 28, l. 19 – p. 30, l. 2.

Dr. Michael Bernot – Second Deposition Pending

Any objections to the depositions of the foregoing persons or to any

questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

<div align="center">21.</div>

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

<div align="center">22.</div>

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR

<div align="center"></div>

51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**By the Plaintiff:** See Proposed Special Verdict Form, Attachment "I-1."

**By the Defendant:** See Proposed Special Verdict Form, Attachment "I-2."

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on February 10, 2012, to discuss in good faith the possibility of settlement of this case. The court (_____) has or (**X**) has not discussed settlement of this case with counsel. It appears at this time that there is:

(_____) A good possibility of settlement.

( **X**    ) Some possibility of settlement.

(_____) Little possibility of settlement.

(_____) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

28.

The plaintiff estimates that it will require 2 days to present its evidence. The defendant estimates that it will require 2 days to present its evidence. There are no other parties. It is estimated that the total trial time is 4 days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case ( **X** ) submitted by stipulation of the parties or (_____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon

any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _____ day of _____, 20_____.

_____
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

*/s/Trent Shuping*_____        */s/Daryl G. Clarida*_____
Counsel for Plaintiff            Counsel for Defendant

Michael J. Warshauer             Daryl G. Clarida
Georgia Bar No. 018720           Georgia Bar No. 126391
Trent Shuping                    Keith M. Hayasaka
Georgia Bar No. 159083           Georgia Bar No. 472412
Warshauer Law Group, P.C.        Hall, Bloch, Garland & Meyer, LLP
Suite 2000                       Suite 500
3350 Riverwood Parkway           900 Circle 75 Parkway
Atlanta, GA  30339               Atlanta, GA  30339-3099
(404) 892-4900                   (678) 888-0036
mjw@warlawgroup.com              darylclarida@hbgm.com

## ATTACHMENT "A"

*Parties' List of Questions Regarding Jurors' Legal Qualifications to Serve*

1.  If you are not a citizen of the United States, please raise your hand.

2.  If you have difficulty understanding, speaking, or reading the English language, please raise your hand.

3.  If you are under 18 years of age, please raise your hand.

4.  If you have a health condition that would prevent you from serving as a juror in this case, please raise your hand.

5.  Please raise your hand if you are not a resident of one of the following counties:  Bartow County, Chattooga County, Dade County, Floyd County, Gordon County, Murray County, Paulding County, Polk County, Walker County, Whitfield County.

6.  If you have resided in one of the counties just mentioned for a period of less than one year, please raise your hand.

7.  If you have a charge pending against you for the commission of, or if you have been convicted in State or Federal Court of a crime punishable by imprisonment for more than one year, please raise your hand.  If so, have your civil rights been restored?

8.      Are you related by blood or marriage to the Plaintiff, Connie Strickland?

9.      Are you related by blood or marriage to Michael J. Warshauer, Lyle Griffin

Warshauer or James M. Poe?

10.     If you have any business or financial interest in Norfolk Southern Railway

Company, including being employed, owning shares, or having any relation

by blood or marriage to any employee or shareholder of Norfolk Southern

Railway Company, please raise your hand.

## ATTACHMENT "B-1"

## "PLAINTIFF" QUESTIONS FOR JURORS
### (GENERAL)

The Plaintiff submits the following general voir dire questions to the jurors:

1.     Do any of you know me, or any of my law partners or lawyers at my firm: Lyle Warshauer, Douglas Dumont, Darl Champion, Trent Shuping, or the Plaintiff, Connie Strickland?

2.     Do any of you know Darryl Clarida, attorney for Defendant, Norfolk Southern Railway Company or any of the lawyers in the law firm of Hall, Bloch, Garland & Meyer, LLP including Eileen Crowley, Benjamin M. Garland, F. Kennedy Hall, J. Ellsworth Hall III, J. Ellsworth Hall IV, Keith M. Hayasaka, J. Patrick Meyer, Jr., Amanda M. Morris, Rick Pilch, Amanda Rodman Smith, J. Steven Stewart, Walker Steven Stewart, Mark E. Toth, Jay C. Traynham, or Duncan D. Walker III?

3.     If any of you know any of these attorneys, or anyone who works for them, please tell us how you know them.

4.     There are several people who may be called as witnesses in this case, I am going to list some of them, please tell us if you know any of the following:

> Connie Strickland
> Rebecca Strickland
> Joan Taylor
> Heather Isbell

1

Farrel Green
Eddie Sims
Michael Potts
Bob Kemp
Bruce Callahan
Tim Lyons
Max Chambers
Larry Carr
Dr. Christopher Piller
Dr. Francis Rushing
G.E. Simon
Neville M. Wilson
Greg Lehman
R.E. Campbell, Jr.
S.K. Long
Robert Peace
T.E. Yarbrough
Tim Hayes
John Knecht
Dr. C. Ray Prible
Dr. Michael P. Bernot
Dr. Donna M. Kulick
Dr. Stephen A. Dawkins
Barbara Byers

5.      If you or any member of your family has ever worked on a job with Norfolk Southern Railway Company, with any other railroad, or on a job that involved moving rail cars, will you please tell us about that employment?

6.      Have any of you ever applied or released a hand brake on a rail car? If so, tell us the circumstances that caused you to do that.

7.      Who among you is a railroad hobbiest or buff?

8.      Who needs to be positive in order to find for either party in this case?

9.     Are you aware that there is a difference in the burden of proof between criminal and civil cases?  The burden of proof in criminal cases requires proof beyond a reasonable doubt.  The burden of proof in civil cases such as this one requires proof only by a "preponderance or greater weight of the evidence."  The Court will instruct you specifically on the burden of proof between civil and criminal cases, and that the lesser civil standard applies in this case.  Will the fact that a lower standard applies to this case cause any of you to believe that you will not be able to render a fair and impartial verdict according to the Court's instructions of the law relating to burden of proof?

10.     Do any of you have a belief that unless the Plaintiff proves his case beyond a reasonable doubt that you will be unable to find for him?

       i.     If you are of this belief, please tell us how you came to that position.

11.     Mr. Strickland claims that the rail car on which he was working had a  handbrake that did not operate the way it is required to by law.  Do any of you know anything about railcars and how they work?

12.     Mr. Strickland was employed by Norfolk Southern Railway Company when he was injured, please tell us about any business or employment relationship you, or any member of your family, has with the Norfolk Southern Railway Company, Central of Georgia Railroad or any railroad.

13.     Mr. Strickland's claims against his railroad employer are governed by special acts of Congress called the Federal Employers' Liability Act and the Safety Appliance Act as well as certain Federal Safety Regulations promulgated by the Federal Railway Administration, do any of you have any knowledge of these laws?

14.     As noted, this is an action under the Federal Employers' Liability Act, also known as the FELA in which Mr. Strickland is suing his employer. Do any of you feel that a person simply should not sue his employer?

15.     Plaintiff claims that the hand brake used by the Defendant violated the Federal Safety Appliance Act. Under the Federal Employers Liability Act, if the violation of a Safety Appliance Act or Federal Safety Regulation contributed in whole or in part to the Plaintiff's injuries, the Defendant railroad can be found liable even if it was not careless or negligent. Do any of you have any problem with returning a verdict against Norfolk Southern and in favor of the Plaintiff Mr. Strickland even though Norfolk Southern might not have known that the handbrake would fail to function properly?

16.     If you or any member of your family is a lawyer or works in a law firm, please tell us the name of the law firm and the kind of work they do there?

17.     If you or any member of your family has worked as an insurance company adjuster, or claims adjuster of any kind, or workers' compensation administrator or adjuster, please tell us about this work.

18.     If you or any member of your family has ever studied or worked in the field of medicine, please tell us about this work.

19.     Who feels that juries made up of people such as yourself are incapable of determining damage awards?

20.     Are any of you or members of your family members of a group or organization that has as one of its goals, to change or limit access to, or otherwise reform in any way the jury or civil justice system?

21.     If you have worked to assist an elected politician or candidate for office who has advocated capping jury awards, regardless of the injury suffered, please tell me the name of the person you helped and also tell me about your efforts in that area.

22.     Who believes that most jury awards in this country are excessive?

23.     Some people think there should be caps on the amount of damages a jury may award.  If you are one of these people please tell us your thoughts on this.

24.     Before hearing the evidence of the extent and cause of Mr. Strickland's injuries, do any of you, for whatever reason, have any predisposition as to the maximum amount you could award?

25.     If Plaintiff shows by a preponderance of the evidence that a handbrake whose operation violated the Safety Appliance Act is responsible for the damages suffered by Plaintiff, do you have any pre-conceived notions that would prevent you from rendering a large verdict if it is required in accordance with the law and evidence?

26.     Some people think that there are too many federal laws and regulations. Other people feel that some federal safety regulations are necessary to prevent individuals from being harmed. Which best describes your feelings?

27.     If the evidence shows that the Defendant violated the Safety Appliance Act, would your feelings about federal regulations prevent you from returning a large verdict for the Plaintiff if demanded by the law and the evidence.

28.     If you or any member of your family or close friend has ever had a severe injury to his/her arm or shoulder, please describe the circumstances.

29.     If any of you or members of your family have ever suffered from daily pain to the extent that it caused a change in the ability to work, will you please tell us about the cause and effect of that pain?

30.     If you or any member of your family has ever suffered from a substantial injury or disease process which changed the victim's life in any

material way, such as requiring them to give up a chosen career or lifestyle, will you please describe the circumstances for us?

31.    Mr. Strickland has a rotator cuff injury.   Who has suffered a rotator cuff or shoulder injury?

32.    If you or any member of your family has ever suffered chronic pain which changed the victim's life in any material way, such as requiring them to give up a chosen career or lifestyle, will you please describe the circumstances for us?

33.    Who has any chronic condition for which there is no surgical cure?  Will you tell us about what you are experiencing?

34.    How many of you are involved in your community, either in politics or church or through some other service.  If you are such a person, will you please describe the activities in which you participate?

35.    Do any of you listen to talk radio?

          i.    If so, to whom do you listen?

         ii.    How regularly do you listen to talk radio?

36.    Have any of you previously served on a jury?  Tell us about your service.

37.    Have any of you ever filed a claim for personal injuries?  Tell us a little about the claim.

38.     Have you or has any member of your family ever been involved in a lawsuit either as a plaintiff or defendant in a civil action (excluding a divorce proceeding)?

> i.  If so, please tell us about that case and how that experience will affect your service in this case in which Plaintiff asserts that he has permanent injuries.

39.     Before knowing anything more about this case, who would be inclined to side with the corporate Defendant, Norfolk Southern, merely because it is a corporation being sued by a worker?

40.     Have you or any one in your family ever worked for a large corporation in a management capacity?

41.     What are your general thoughts of feelings about people who bring lawsuits for personal injuries?

42.     Do you believe that lawsuits like this one just end up costing all of us money?

> i.  If so, would that affect your ability to return a verdict that fully compensates the Plaintiff for all of his losses if the evidence and the law of the case lead you to find liability against the Defendant?

43.     As I mentioned earlier, this case involves a claim that Mr. Strickland suffered physical and emotional injury.   You cannot factor

sympathy for the Plaintiff into you decisions about this case. Some people have no problem at all ignoring the human suffering Mr. Strickland has endured, and others can consider the facts but will have a very hard time ignoring their natural tendency to be sympathetic. Which are you closer to?

44.   In contrast to factoring out sympathy, one of the things you will be asked to factor in is corporate responsibility when considering whether Norfolk Southern is liable for the damages suffered by its employee. Again, some people have no problem considering what rules should apply to NS as a railroad and others have real problems judging how a corporation should be judged in this community. Which are your closer too?

45.   Is there anyone who thinks corporations like NS should not be liable or responsible for damages unless it meant to cause harm?

46.   How many of you have known someone who has tried to get a job in a different line of work at 55 years of age?

47.   This incident happened while Mr. Strickland was working with rail cars at the Textile Rubber & Chemical Co. in Dalton, GA. Is anyone familiar with this area?

48.   Is there anything about you that I have not touched upon that you think I ought to know about that would prevent you from being the right juror for this case?

     i.  If so, please tell us what you think we ought to know so we pick the right jury for this case.

## ATTACHMENT "B-2"

### *Defendant's General Voir Dire Questions*

1.  As you know my name is Daryl Clarida and I represent the Defendant, Norfolk Southern Railway Company; the name of my law firm is Hall, Bloch Garland & Meyer, LLP.  Do any of you know me, someone at my firm or had any dealings with my firm?

2.  Do any of you know Plaintiff's attorneys, Michael Warshauer, Douglas Dumont and Trent Shuping, or any member or employee of their law firm Warshauer Law Group, P.C.?  If so, please explain.

3.  Do you know the Plaintiff, Connie Strickland, or any of his immediate family members, including wife Rebecca?  Or sons Blake Strickland and Dustin Strickland, who live in Rome, Georgia?  Or his ex-wife Sycondie Mudd, who lives in Rome, Georgia?

4.  Do you know, however slightly, any person who presently works for or has in the past worked for Norfolk Southern Railway Company?  If your answer is yes, then also state the position in which this person is or was employed, the department in which this person works or worked, and the dates of employment.

5.      Have you ever had any dealings with Norfolk Southern Railway Company? If so, please describe those dealings including when they took place and with whom you dealt.

6.      Have you, a friend or family member ever worked for or with a **railroad**, not just limited to Norfolk Southern Railway Company**,** in any capacity?

7.      Do any of you have negative feelings regarding railroads, in general, or Norfolk Southern, in particular?

8.      Do you know anyone else on this jury panel or anyone in this courtroom?  If so, please explain.

9.      Do you know any potential witnesses in this case, who are [read parties' witness lists]:  _____.  If so, please explain.

10.     Have you, or has anyone you know, ever worked for a government agency that oversees or regulates other businesses (e.g. OSHA or EPA)?

11.     Do you, any members of your immediate family, or any of your close friends, have any experience working in the medical or pharmaceutical fields?  If so, please explain.

2

12.     Have you, any member of your immediate family, or any of your close friends, attended law school, engaged in the practice of law, or worked in a law office?  If so, please explain.

13.     Have you, any of your family members or close friends worked in Safety or Risk Assessment positions?

14.     Do any of you, your family members, or friends work in jobs presently or in the past that have a safety or general conduct rule book?

15.     Do any of you, your family or friends, to the best of your knowledge, work jobs that start the day with safety meetings or briefings?

16.     Have any of you, your family or friends ever worked at a job where the employer had a safety committee that addressed safety within the workplace?

17.     Have you, or any member of your immediate family, ever been a plaintiff or a defendant in any lawsuit?   If so, state whether you were (or your immediate family member was) a plaintiff or defendant, and describe the lawsuit.

18.     Were you satisfied with the way the lawsuit you were involved in was handled and resolved?

19.   Has anyone here ever served on a jury before this case?   If so, please explain.

20.   Has anyone on the panel ever been in the military?  If so, please explain.

21.   Have you or any family member been injured while at work?  (Did you make a claim?  What was the result?)

22.   Do you or do any members of your immediate family belong to a labor union?  How many people here have strong feelings positively or negatively about unions?

23.   The evidence in this case is that Plaintiff had a rotator cuff tear in his right shoulder and a bicep tendon tear.  Do you or anyone within your family have experience with someone who had these conditions or other shoulder related injuries?  If so, describe the type of problem, manner in which the shoulder was hurt, the treatment received, the procedures followed in trying to overcome the problem, and the condition today.

24.   Anyone here familiar with Functional Capacity Evaluations or FCE's to determine a person's physical capacity?

25.   You will be hearing testimony from one or more medical doctors in this case.  Are there any of you who are biased against a medical doctor because of his or her profession?

26.   Have any of you ever been treated at Harbin Clinic which is located in Rome, Georgia?

27.   As the judge will explain, Plaintiff must prove that Norfolk Southern did something wrong that caused Plaintiff's injuries.  We contend that Norfolk Southern did nothing wrong to cause Plaintiff's injuries.  This is an unwitnessed incident where Plaintiff claims he was injured while attempting to release a wheel hand brake on a railroad tank car.  Do any of you know what a railroad tank car is?  Are any of you familiar with wheel hand brakes on railroad tank cars?

28.   How many of you here believe that a person should look for employment if they are physically able to work?

29.   Have any of you ever had to go through vocational rehabilitation or job re-training?  If so, please explain.

30.   Have any of you, or your friends or family members been required to relocate as a result of an employer reducing its business operations where

5

you or your friend or family member worked, or potentially shutting down the entire business operation and moving it to another location within the state or outside of the state?

31. If the evidence at trial shows that Norfolk Southern did not legally cause Mr. Strickland's claimed injuries, is there anyone who would be unwilling to send Mr. Strickland away without any money?

32. Plaintiff's lawyer has asked many questions regarding damages or amounts you would be willing to award him. How many of you believe that a person who took the time and effort to file a federal lawsuit is entitled to recover damages, regardless of what the evidence shows?

33. How many of you will commit to hearing the evidence from both parties before deciding a case?

34. Do any of you have any preconceived notions about how much this case is worth?

35. Do any of you disagree with the statement that a person is responsible for his own actions, including the choices he makes?

36.     How many of you, when someone has said you owed them money for something they claimed happened and you did not see, required that person to prove that you were responsible to pay the amount owed?

37.     How many of you tend to doubt a person when they starting changing their story about how something happened?

38.     The Plaintiff has the burden of proof in this case.  How many of you would require Plaintiff prove his claim before awarding him any damages legally caused by Norfolk Southern?

39.     How many of you believe that an employee has an obligation to report unsafe conditions in the workplace that their employer is not aware of so that they can be corrected?

40.     How many of you when you are given something to solve - could be a puzzle, riddle or work project - look at how things fit together before coming up with the answer or solution?

41.     A company like my client, Norfolk Southern, is given equal standing under the law as an individual like Mr. Strickland.  How many of you would be inclined to side with Mr. Strickland because he is an individual suing a company?

42.     To this end, there has been recent news about the 1% and big businesses needing to pay their fair share.  How many of you feel that Norfolk Southern ought to pay for Mr. Strickland's injuries because it is a big business and he was allegedly hurt while working for it?

43.     How many of you have seen or heard commercials on TV, the radio, or the Internet where attorneys have advertised that if you have been hurt, it's probably due to someone else's negligence and they will get what you're owed?

44.     How many of you have positive impressions of these commercials?

45.     How many of you have negative impressions of these commercials?

46.     There has been a lot of coverage regarding tort reform and our society becoming too quick to blame others for their problems.  Do any of you agree with this opinion?

47.     Plaintiff's counsel has asked questions about if you have a certain amount you will limit awarding Mr. Strickland for his injuries.  For example, we have heard a lot of news about the U.S. deficit being $16 trillion.  Even if you wouldn't award Mr. Strickland $16 trillion, is there anyone here

unwilling to award him a fair and just amount for any injuries he proves were legally caused by my client?

48.  How many people feel that there are too many government regulations out there restricting what people can or can't do?

49.  How many of you feel that we need more government regulations to protect people?

50.  Sympathy for an injured person is a natural human emotion.  The Judge will tell you that your verdict must be based on the facts and the law and not sympathy.  Can you put aside any feelings of sympathy and base your verdict on the law and evidence?

51.  Most of you have probably been in a group decision-making situation, whether at home, work, socially, religious, or community-related.  In those situations, how many of you would consider yourself to be very talkative?  How many would consider yourself to be quiet?

52.  From what you have heard so far, is there any experience in your life that might keep you from being fair and impartial to both sides?

53.  Everyone brings their own life experiences and resulting biases with them to the courtroom.  That's why we have been asking you several questions about

your life experiences.  With that said, how many of you are unwilling to listen to the evidence and follow the law as given to you by the Court?

Defendant requests the right to ask additional, related and follow-up questions in connection with any responses given to the above questions as well as to the Court's questions regarding occupations of prospective jurors and spouses.

## ATTACHMENT "C"

## OUTLINE OF PLAINTIFF'S CASE

I.      Succinct Factual Summary

On July 23, 2009, Connie Strickland was injured by an inefficient hand brake while performing his duties as a conductor for Defendant, Norfolk Southern Railway Company. The rail car with the inefficient handbrake was being used by the Defendant in interstate commerce.

Broadly speaking, the handbrake on a rail car may be thought of as the equivalent of a parking brake on a car. The type of brake at issue in this case is applied by turning a wheel. When the wheel is turned it pulls and collects a chain that is attached to the braking mechanism.

There are two ways to release the brake, either by rotating the wheel in the opposite direction to release the chain, or by operating the quick release lever, which releases the chain, and thereby the brake, all at once.

Upon approaching the handbrake that caused his injury, Mr. Strickland operated the quick release lever. If the handbrake was operating efficiently, the lever should have released the brake but it failed to operate properly.

After the quick release failed to function, Mr. Strickland attempted to release the brake by turning the wheel to release it. He assumed the

proper stance and attempted to turn the wheel, but the wheel did not turn. If the handbrake had been operating efficiently it would have turned in response to this effort.  Mr. Strickland then tried to turn the wheel again, using more force than he did on his first attempt. In response to the added force, the wheel turned.

Following the second attempt to turn the wheel Mr. Strickland felt a twinge in his right shoulder. Mr. Strickland did not realize at the time that he was injured. He knew his shoulder felt different, so he went home and treated it with over the counter creams, thinking that whatever had happened to his shoulder would heal over time. Unfortunately, Mr. Strickland's shoulder did not get better and he was ultimately diagnosed with a massive rotator cuff tear. Mr. Strickland underwent surgery to repair his shoulder, but it still causes him pain and restricts his ability to use his right arm.

## II.   Liability

As a result of Defendant's violation of the Federal Employers' Liability Act and the Safety Appliance Act and applicable Federal Safety Regulations that demand that handbrakes operate efficiently, the Plaintiff was caused to be seriously injured in that he was caused to suffer severe injuries to his shoulder which continues to cause pain, interfere with his daily life and which prematurely ended his railroad career.

### III.    Specifications of Negligence

To recover under the FELA, the Plaintiff must establish that the Defendant was negligent in some manner by failing to provide Plaintiff a reasonably safe place to work.  45 U.S.C. § 51.

Negligence is established, as a matter of law, if there is a violation of either a Federal Safety Appliance Act or a Federal Railway Administration regulation.  49 U.S.C. § 20302(a)(1).

The tank car that injured Plaintiff was in violation of the Safety Appliance Act, 49 U.S.C. §20302(a)(1), which demands that each railcar have an efficient hand brake. It also violated 49 C.F.R. §231.2 which also required the car to have an efficient hand brake.

### IV.    Damages

####     1.    General Damages

Plaintiff is entitled to general damages for pain and suffering as these terms are commonly defined in their broadest sense.  Plaintiff will ask for an amount to be determined by the enlightened conscious of the jury.

####     2.    Special Damages

Plaintiff is entitled to special damages for lost past wages at the last time calculated in the amount of $102,249.00, past fringe benefits in the

amount of $24,314.00, future wages in the amount of $883,336 and future

fringe benefits in the amount of $388,192.00 for a total of $1,297,981.00 in

past and future lost wages and fringe benefits.

### 3.    Statutes Allowing Damages

45 U.S.C. § 51 provides that Plaintiff is entitled to recover all

damages caused in whole or in part by Defendant's negligence.

## ATTACHMENT "D"

*Defendant's Outline of Case*

On July 23, 2009, Plaintiff Connie Strickland was employed by Norfolk Southern as a switchman and working the "GD01" job in Dalton, Georgia. The GDO1 job switches rail cars, which includes climbing on and off the cars and applying and releasing hand brakes. According to Plaintiff's testimony, this is an unwitnessed incident that occurred around 5:45 p.m., when Plaintiff's crew was in the process of switching cars at Norfolk Southern customer, Textolk Rubber Industry.

Plaintiff mounted the "B" or brake end of a tank car that had been in a cut of cars (connected or coupled railroad cars). Plaintiff does not know the identification number for that particular tank car. He is unaware of anybody being on the car before him and cannot recall any prior problems with the brake on that particular car or that type of tank car. It is even possible that Plaintiff handled same car himself a few days before. Prior to switching Textile Rubber, Plaintiff had not encountered any hand brakes that required use of significant force to release.

Plaintiff does not recall the brake looking bent, rusty, or looking any different than a normal brake. Plaintiff attempted to release the brake by turning the hand brake wheel counterclockwise. To do this, he grabbed the waist-level brake wheel with his right hand at the three o'clock position and pulled counterclockwise towards the 12 o'clock position. The wheel did not initially move, but after getting in a better position, Plaintiff applied a little more pressure and was able to turn the wheel and release the brake.

Plaintiff believes that the amount of force he applied with his right arm to release the brake was a slow and constant steady force. However, at some point during the wheel's first quarter turn, Plaintiff claims he felt a "twinge" in his right shoulder but nonetheless continued to release the brake. He dismounted the tank car and proceeded to release another hand brake. Altogether, he released and reapplied between 10 to 12 hand brakes at Textile Rubber Industry that day. Norfolk Southern safety and general conduct rules required him to report any equipment that is difficult to operate beyond what is anticipated to his supervisor and he did not mention anything about a difficult hand brake until at least ten days after the incident and never identified the particular car so it could be inspected.

When he drove home, he felt an ache in his shoulder but it felt just like "another 12-hour day."

On July 24, 2009, Plaintiff worked from 7:00 a.m. to 3:00 p.m. and applied or released approximately ten hand brakes. In between July 23, 2009 and August 1, 2009, Plaintiff worked regularly and claims he took Motrin and used ice and warm compresses on his shoulder while at home. On August 4, 2009, Plaintiff filled out a Form 22 Personal Injury Report, reporting his injury but did not claim that he hurt himself turning a hand brake on a tank car. Plaintiff gave a tape recorded statement to Norfolk Southern District Claims Agent Linda Kurzenberger on August 19, 2009. In response to a question asking if there was a piece of equipment such as a hand brake or switch that caused his pain, Plaintiff did not identify any piece of equipment.

In September 2009, surgery was performed on Plaintiff's shoulder by Dr. Christopher Piller, who described Plaintiff's injury as a massive rotator cuff tear, involving tearing of three of the four tendons and resulting from a sudden acute injury with "significant force." According to Dr. Piller and Defendant's expert, Dr. Michael Bernot, the type of significant tearing to multiple tendons exhibited by Plaintiff is consistent with a fall or a violent jerking of the arm upwards.

3

According to Dr. Piller, patients with this injury typically experience significant pain and sudden loss of function; it would have been extremely difficult and painful for Plaintiff to do his job after suffering the injury.  Dr. Bernot also believes that on July 23, 2009, Plaintiff did not exhibit the symptoms and findings expected with a full thickness rotator cuff tear, which include substantial pain and loss of motion.

Plaintiff has not sought to obtain any gainful employment since the date of the incident, although he has admitted that he is capable of performing some work.

Norfolk Southern denies the material allegations of Plaintiff's Complaint and contentions other than what was admitted in its Answer and outline.  Norfolk Southern Railway Company denies that it legally caused or contributed to Plaintiff's injuries and denies it is liable to the Plaintiff for the sum sued for and in any amount whatsoever.

Norfolk Southern Railway Company contends that Plaintiff's actions were the sole legal cause of his alleged injuries.  Moreover, the injuries or expenses claimed by Plaintiff were not the result of the incident in suit, that is, the incident on July 23, 2009 where Plaintiff claims he injured his shoulder while attempting to turn a hand brake wheel.  Therefore, Plaintiff may not recover for injuries not

legally caused by the Defendant.   Finally, although Plaintiff claims that he is unable to return to his former job, there are alternative jobs which he can do and Plaintiff has failed to properly mitigate his damages.

**Relevant rules, regulations, statutes, ordinances and illustrative case law**

## I.    45 U.S.C.§ 51 – The Federal Employers' Liability Act ("FELA")

Section 1 of the FELA makes "[e]very common carrier by railroad … liable in damages" for the injury or death of any employee employed in interstate commerce that "result[s] in whole or in part from the [railroad's] negligence."  45 U.S.C. § 51.  FELA also gives rise to claims in conjunction with railroad-specific safety statutes, including the Federal Safety Appliance Act ("FSAA").  *Moore v. Chesapeake & Ohio Ry.*, 291 U.S. 205, 2010 (1934).  The FSAA does not itself create a private cause of action; instead, FELA "embraces claims of an employee based on violations of the Safety Appliance Act."  *Crane v. Cedar Rapids & Iowa City Ry.*, 395 U.S. 164, 166 (1969).

## II.   49 U.S.C. § 20302 - The Federal Safety Appliance Act

The FSAA provides that "a railroad carrier may use or allow to be used on any of its railroad lines—a vehicle only if it is equipped with…efficient hand brakes."  49 U.S.C. § 20302(a)(1)(B).

### III.    Illustrative Case Law on the Issue of Liability

A.    *Myers v. Reading Co.,* 331 U.S. 477, 483 (1947) (stating that a hand brake is inefficient if there is "a failure to function, when operated with due care, in the normal, natural, and usual manner.")

B.    *Richardson v. Consolidated Rail Corp.,* 17 F.3d 213, 217 (7th Cir. 1994) (The plaintiff "bears the burden of proving that the hand brake was not working efficiently when he was injured, and his testimony is not conclusive.")

C.    *Brady v. Southern R. Co.,* 320 U.S. 476, 484 (1943) (determining that there is insufficient evidence to support a liability verdict where a device is misused rather than actually defective).

D.    *Schmaltz v. Norfolk & Western Ry. Co.,* 896 F. Supp. 180 (N.D. Ill. Aug. 30, 1995) ("Expert testimony is generally required to establish a causal connection between an accident and an injury unless the connection is the kind that would be obvious to laymen, such as a broken leg from being struck by an automobile.") *See also See also Jett v. CSX Transp., Inc.,* 2009 U.S. Dist. LEXIS 28750 (E.D. Ky., Mar. 31, 2009) (finding insufficient evidence from which a reasonable jury could draw an inference of causation where in the absence of admissible expert testimony, "[t]he only remaining evidence of causation is

6

plaintiff's testimony that his shoulder hurt sometimes while pulling levers at work.")

E.     *Toth v. Grand Trunk Railroad*, 306 F.3d 335 (6th Cir. 2002) (affirming the district court's sole proximate cause jury instruction where sufficient evidence to warrant the instruction was introduced, such as the plaintiff's inconsistent testimony regarding the events of the accident and that he had not been following safety rules).  *See also Walden v. Illinois C. G. Railroad*, 975 F.2d 361 (7th Cir. 1992); *Beimert v. Burlington Northern, Inc.*, 726 F.2d 412 (8th Cir. 1984); *Magelky v. BNSF Ry. Co*., 491 F. Supp. 2d 882 (D.N.D. Jun. 14, 2007).

F.     *Mosco v. B&O Railroad*, 817 F.2d 1088 (4th Cir. 1987) (rejecting plaintiff's Boiler Act claim and noting that alleged violation of the Act was due to plaintiff's actions "and not to any failure of [the railroad] to maintain the parts and appurtenances…in safe and proper condition.")

## IV.   Illustrative Case Law on the Issue of Damages

The jury should not be permitted to consider awarding damages for future medical expenses that are not reasonably certain to occur.  *See Womack v. Burgess*, 200 Ga. App. 347, 408 S.E.2d 159 (1991).  Where testimony about future medical expenses is inconclusive and conjectural, it should not go to the jury.  *Id*.  Damages

that are attributable to subsequent unrelated injuries should not be awarded either. *See Stevens v. Bangor & Aroostook R.R.*, 97 F.3d 594, 599 (1st Cir. 1996); *Harris v. Ill. Cent. R.R.*, 58 F.3d 1140, 1144 (6th Cir. 1995).

The jury should consider only after tax income in determining lost past and future wages in a FELA case. *Norfolk and Western Railway Co. v. Liepelt*, 444 U.S. 490, 493-94, *rehg denied*, 445 U.S. 972 (1980); *Jones & Laughlin Steel Corp. v. Pfeiffer*, 462 U.S. 523, 534 (1983); *CSX v. Williams*, 230 Ga. App. 573, 497 S.E.2d 66 (1998). Since the true measure of damages is the disposable or after tax income, all federal and state taxes, including Railroad Retirement Tier I and Tier II taxes and expenses incurred in earning income, must be subtracted from the actual wage lost. *See Rachel v. Consolidated Rail Corp.*, 891 F. Supp. 428 (N.D. Ohio 1995); *Edwards v. Atchison & Topeka S.F. Rwy.*, 684 N.E.2d 919 (Ill. App. 1997). *Norfolk Southern Railway Company v. Perkins,* 224 Ga. App. 552, 481 S.E.2d 545 (1997) is incorrect and against the weight of authority under FELA.

Plaintiff receives a monthly Annuity payment from the Railroad Retirement Board ("RRB") based, in part, on prior earnings and years in service. Accordingly, the RRB has a lien against any verdict or settlement for amounts it has paid to Plaintiff. The amount of the RRB lien must be deducted from any verdict Plaintiff

8

might receive against Norfolk Southern, if any, before judgment is entered. Defendant will file a trial brief prior to trial to advise the Court and Plaintiff's counsel of its obligation to withhold Railroad Retirement taxes and other required taxes or liens from any judgment which includes lost wages, to avoid any dispute when such taxes are withheld, and to advise the Court and counsel of the impact such a judgment may have on Plaintiff's RRB Annuity.

# ATTACHMENT "E"

*Facts Stipulated by the Parties*

1. On July 23, 2009, Plaintiff Connie Strickland was an employee of the Defendant Norfolk Southern.

2. On July 23, 2009 Plaintiff Connie Strickland worked the "GD01" job which involved switching rail cars at what is known as the "Textile Rubber Industry."

3. Plaintiff Connie Strickland's work at the Textile Rubber Industry on July 23, 2009 was within the scope of his employment with Defendant Norfolk Southern.

4. Defendant Norfolk Southern is, and was on July 23, 2009 a common carrier by railroad engaged in interstate commerce.

5. The United States District Court for the Northern District of Georgia has jurisdiction over the subject matter of this action.

6. The United States District Court for the Northern District of Georgia has jurisdiction over the parties in this action.

7. Venue is proper in the Northern District of Georgia.

8. Plaintiff was employed by Norfolk Southern as a switchman.  His duties as a switchman were related and necessary to and substantially affected the conduct of interstate commerce by Defendant.

**<u>By the Defendant:</u>**

In addition, Defendant Norfolk Southern states that the following facts have been stipulated by the parties:

1)   Prior to switching Textile Rubber on July 23, 2009, Plaintiff had not encountered any hand brakes that required use of significant force to release.  [Doc. 61-2, ¶ 4]

2)   Plaintiff does not know the identification number for the particular tank car containing the hand brake that Plaintiff claims injured him on July 23, 2009.  [Doc. 61-2, ¶ 6]

3)   Plaintiff was not aware of anybody being on the tank car before him and cannot recall any prior problems with the brake on that particular car or that type of tank car.  [Doc. 61-2, ¶ 7]

4)   Plaintiff does not recall the brake looking bent, rusty, or looking any different than a normal brake.  [Doc. 61-2, ¶ 9]

5)   Plaintiff next attempted to manually release the brake by turning the wheel counterclockwise by grabbing the waist-level brake wheel with his right hand at the three o'clock position and pulling counterclockwise towards the 12 o'clock position.  [Doc. 61-2, ¶ 12]

6)    The wheel did not initially move, but after getting in a better position, Plaintiff applied a little more pressure and was able to turn the wheel and release the brake.  [Doc. 61-2, ¶ 13]

7)    The force applied by Plaintiff's right arm on the brake wheel was a slow and constant steady force.  [Doc. 61-2, ¶ 15]

8)    Plaintiff dismounted the tank car and proceeded to release another hand brake and altogether released and reapplied between 10 and 12 hand brakes at Textile Rubber Industry on July 23, 2009.  [Doc. 61-2, ¶ 16]

9)    Plaintiff's conduct at the time of the incident was governed by Norfolk Southern's safety and general conduct rules, which serve as a standard of conduct for Norfolk Southern employees.  [Doc. 61-2, ¶ 34]

10)   Norfolk Southern rules require Plaintiff to report any equipment that was difficult to operate beyond what was anticipated to his supervisor, but he did not mention anything about how or why he felt his shoulder was sore to anybody at work on July 23, 2009.  [Doc. 61-2, ¶ 17]

11)   The rules require that a person who has trouble applying or releasing a hand brake to get help from another transportation employee.  [Doc. 61-2, ¶ 35]

3

12) According to Norfolk Southern's safety and general conduct Rule 1106, if a hand brake does not release when the quick release lever is operated, then the hand brake wheel should not be operated until the tension on the hand brake chain and associated mechanism has been relieved.  [Doc. 61-2, ¶ 36]

13) Plaintiff's actions in attempting to turn the hand brake wheel after the quick release lever did not release were in violation of Rule 1106.  [Doc. 61-2, ¶ 37]

14) On July 24, 2009, Plaintiff worked the GR02 yard job at Krannert Yard, which began at 7:00 a.m. and lasted until 3:00 p.m.  [Doc. 61-2, ¶ 19]

15) Plaintiff applied or released approximately ten hand brakes on July 24, 2009, and did not report any changes to his shoulder at the end of the day.  [Doc. 61-2, ¶ 20]

16) Surgery was eventually performed on Plaintiff's shoulder by Dr. Christopher Piller, who described Plaintiff's injury as a massive rotator cuff tear, involving tearing of three or four tendons.  [Doc. 61-2, ¶ 23]

17) Patients with acute massive rotator cuff tears typically experience significant pain and sudden loss of function.  [Doc. 61-2, ¶ 28]

18)   Based on the injuries to Plaintiff's rotator cuff, it would have been extremely difficult and painful for him to do his job after suffering the injury.  [Doc. 61-2, ¶ 30]

**By the Plaintiff:**

Plaintiff has not stipulated to the items listed by Defendant above and objects to these being read to the jury. There is a difference between responding to statements of material facts for summary judgment motions and the stipulations which parties mutually agree may be read to the jury.

## ATTACHMENT "F-1"

## PLAINTIFS'' WITNESS LIST
**The following are witnesses Plaintiff <u>will</u> have at trial:**

Connie Strickland

**The following are witnesses Plaintiff <u>may</u> have at trial:**

1.   Rebecca Strickland
     700 County Road 908
     Cedar Bluff
     Alabama 35959

2.   Joan Taylor (Plaintiff's Sister)
     525 Dixon Road
     Knoxville, TN 37934

3.   Heather Isbell
     P.O. Box 755
     Cedar Bluff, AL 35959

3.   Farrel Green
     852 Winndale
     Dallas, GA 30157

4.   Eddie Sims
     362 Wildwood Circle SW
     Calhoun, GA 30701

5.   Michael Potts
     1309 Snug Harbor Ct. NE
     Marietta, GA 30066

6.   Bob Kemp
     6598 Wallace Tatum Road
     Cumming, GA 30048

7.   Bruce Callahan
     202 Jones Road
     Chatsworth, GA  30705

8.     Tim Lyons
       395 Village Drive
       Chickamauga, GA  30707

9.     Max Chambers
       730 County Road 13
       Centre, AL  35960

10.    Larry Carr
       3 Kris Drive NE
       Rome, GA 30161

11.    Dr. Christopher Piller
       Harbin Clinic Orthopaedics & Sports Medicine
       330 Physician Center
       330 Turner McCall Blvd. Ste. 2000
       Rome, GA  30165

Dr. Piller is not a retained expert. He is a treating physician who performed surgery and treated Plaintiff. Dr. Piller is expected to testify about his treatment of Plaintiff, Plaintiff's injuries, the prognosis for his injuries and any other relevant information.

12.    Francis W. Rushing, Ph.D.
       912 Dixie Avenue
       Madison, GA 30650

Dr. Rushing will provide expert testimony consistent with his Rule 26 report. Dr. Rushing is expected to testify as to the after tax present cash value of any future lost earnings suffered by Plaintiff, his life expectancy and work life expectancy.

13.    Any witness listed by Defendant

Plaintiff reserves the right to supplement this list in a timely fashion

so as not to delay the trial of the case.

## <u>ATTACHMENT "F-2" TO PRETRIAL ORDER</u>

*Defendant's List of Witnesses*

The following witnesses <u>will</u> be present at trial:  none.

The following witnesses <u>may</u> be present at trial:

1.    G.E. Simon
     1550 Marietta Road NW
     Atlanta, GA  30318

2.    Neville M. Wilson
     1200 Peachtree Street NE
     Atlanta, GA  30309

3.    Greg Lehman
     2138 Unity Trail NW
     Marietta, GA 30064

4.    R.E. Campbell, Jr.
     5610 Brighton Rose Lane
     Sugar Hill, GA  30518-7706

5.    S. K. Long
     2752 Callier Springs Road SE
     Rome, GA  30161

6.    Robert Peace
     304 Lexy Way
     Adairsville, GA  30103-2038

7. T.M. Lyons
   395 Village Drive
   Chickamauga, GA  30707

8. J.M. Chambers
   730 County Road 13
   Centre, AL  35960

9. D.B. Callahan
   202 Jones Road
   Chatsworth, GA  30705

10. L.C. Carr
    3 Kris Drive NE
    Rome, GA 30161

11. T.E. Yarbrough
    26 Mount Creek Drive SE
    Rome, GA  30161

12. Tim Hayes
    101 Yarbrough Road
    Aragon, GA  30104-1661

13. John Knecht
    3 Commercial Place
    Norfolk, VA  23510

14. Christopher Piller, MD
    Harbin Clinic Orthopaedics & Sports Medicine
    330 Physician Center
    330 Turner McCall Blvd. Ste. 2000
    Rome, GA  30165

Christopher Piller, MD, Plaintiff's treating physician, is expected to testify about Plaintiff's injuries, the cause of the injuries, the medical care he received, and the future prognosis for those injuries as indicated in the portions of his deposition listed in Paragraph 20 of the Pretrial Order.

15.   C. Ray Prible, MD
      3 Commercial Place
      Norfolk, VA  23510

16.   Michael P. Bernot, MD
      Peachtree Orthopaedic Clinic, Sports Medicine Center
      2045 Peachtree Road, NE Ste. 700
      Atlanta, GA  30309

Michael P. Bernot, MD, an expert in orthopedics, is expected to testify that Plaintiff's injuries are not consistent with the claimed mechanism of injury.  Specifically, Dr. Bernot is expected to testify that the type of significant tearing to multiple tendons in Plaintiff's shoulder is consistent with a fall or a violent jerking of the arm upwards.  In addition, Dr. Bernot is expected to testify that on July 23, 2009, Plaintiff did not exhibit the symptoms and findings expected with a full thickness rotator cuff tear.  Dr. Bernot will base his opinion on his nearly 20 years of experience as an orthopedic surgeon addressing numerous shoulder and upper extremity injuries and current medical literature.

17.    Donna M. Kulick, PhD, CRC, CDMS
       P.O. Box 13355
       Pittsburgh, PA  15243

       Donna M. Kulick, an expert in disability management, is expected to
testify with respect to Plaintiff's vocational capacity and the potential impact
of any limiting characteristics secondary to his injuries upon his
employability and earning capacity.  Her opinions are further detailed in the
Rule 26 report that has been provided to Plaintiff.

18.    Stephen A. Dawkins, MD
       535 N. Central Ave.
       Hapeville, GA 30354

       Stephen A. Dawkins, MD, an expert in occupational medicine, is
expected to testify that Plaintiff's injuries were not caused by his work
activities, including exposure to cumulative trauma, repetitive motion or his
alleged mechanism of acute injury.   Dr. Dawkins' opinions are further
detailed in his Rule 26 report that has been provided to Plaintiff.

19.    Barbara Byers or Designated representative of Norfolk Southern's
       Vocational Rehabilitation Services

20.    Any witness necessary to lay foundation for exhibit

21.    Any witness listed by Plaintiff

22.    Defendant reserves the right to amend this list

**ATTACHMENT "G-1"**


**PLAINTIFF'S EXHIBIT LIST**

(Reference to inadmissible collateral sources, such as workers' compensation and insurance, will be redacted from all Exhibits)


1.    Work Records - NS 585-593

2.    Form 22 of Connie Strickland – NS 603

3.    Statement of Connie Strickland – NS 604

4.    Statement of Connie Strickland – NS 605

5.    Statement of Connie Strickland – NS 775

6.    30 Year Letter – NS 877

7.    Employee of the Week Letter – NS 880

8.    Review Letter – NS 900

9.    Wage Information – NS 1270-1310

10.    Fringe Benefits Statement NS 2294

11.    Wage Summary  - NS 2295-2299

12.    Photographs of hand brake on tank car (demonstrative)

13.    Medical records from Dr. Robert Smith.

14.    Medical records from Christopher Piller.

15.     Medical records from Floyd Urgent Care.

16.     Medical records from Harbin Clinics Orthopaedics

17.     Medical records from Advance Rehabilitation

18.     Medical Records from Redmond Regional Medical Center

19.     Medical Illustrations of Plaintiff's injuries

20.     Post Surgery Photos of Connie Strickland

21.     Plaintiff's Income Tax Returns.

22.     Plaintiff's pay stubs.

23.     Annuity Mortality Table 1949

24.     Demonstrative photographs of railroad tasks

Plaintiff has diligently attempted to list all documentary and physical evidence; however, he reserves the right to supplement this list in a timely fashion so as not to delay trial.

## DEFENDANT'S OBJECTIONS TO ATTACHMENT G-1 (PLAINTIFF'S LIST OF EXHIBITS)

13.     Medical Records from Dr. Robert Smith

Defendant objects to the admission of these records on the basis of hearsay (Fed. R. Evid. 802); lack of authentication and lack of foundation (Fed. R. Evid. 901(a)).

14.     Medical Records from Christopher Piller

Defendant objects to the admission of these records on the basis of hearsay (Fed. R. Evid. 802); lack of authentication and lack of foundation (Fed. R. Evid. 901(a)).

15.     Medical Records of Floyd Urgent Care

Defendant objects to the admission of these records on the basis of hearsay (Fed. R. Evid. 802); lack of authentication and lack of foundation (Fed. R. Evid. 901(a)).

16.     Medical Records from Harbin Clinics Orthopaedics

Defendant objects to the admission of these records on the basis of hearsay (Fed. R. Evid. 802); lack of authentication and lack of foundation (Fed. R. Evid. 901(a)).

17.     Medical Records from Advance Rehabilitation

Defendant objects to the admission of these records on the basis of hearsay (Fed. R. Evid. 802); lack of authentication and lack of foundation (Fed. R. Evid. 901(a)).

18.     Medical Records from Redmond Regional Medical Center

Defendant objects to the admission of these records on the basis of hearsay (Fed. R. Evid. 802); lack of authentication and lack of foundation (Fed. R. Evid. 901(a)).

19.     Medical Illustrations of Plaintiff's injuries

Plaintiff has not provided these documents to Defendant for review or has failed to identify such documents with reasonable specificity so Defendant can locate them.  Accordingly, Defendant reserves the right to object to the admission of these documents on the basis of hearsay, lack of authentication, lack of foundation, relevancy or any other grounds provided by the Federal Rules of Evidence.

24.    Demonstrative photographs of railroad tasks

Plaintiff has not provided these documents to Defendant for review or has failed to identify such documents with reasonable specificity so Defendant can locate them.  Accordingly, Defendant reserves the right to object to the admission of these documents on the basis of hearsay, lack of authentication, lack of foundation, relevancy or any other grounds provided by the Federal Rules of Evidence.

## ATTACHMENT "G-2" TO PRETRIAL ORDER

*Defendant's List of Exhibits*

1.      Plaintiff's Complaint [Doc. 01]

2.      Plaintiff's Responses and Objections to Norfolk Southern's Second Interrogatories and Second Request for Production of Documents

3.      Plaintiff Response to Defendant's Statement of Material Facts for Which There is No Genuine Issue to be Tried [Doc. 61-2]

4.      Plaintiff's Notice of Withdrawal of John David Engle, Jr., as an Expert Witness [Doc. 62]

5.      Form 22 (NS000713)

6.      Form 11131 (NS000902-000903)

7.      Norfolk Southern Report of Personal Injury/Illness Incident dated August 12, 2009 (NS000594)

8.      Form 11050 signed by Plaintiff, dated August 4, 2009 (NS000605)

9.      Plaintiff's handwritten statement, dated August 4, 2009 (NS000604)

10.     Plaintiff's "for clarification" statement (NS000775)

11.     Handwritten statement of T.M. Lyons, dated August 4, 2009 (NS000606)

12.  Handwritten statement of Larry Carr (Form 11050), dated August 4, 2009 (NS000607)

13.  Handwritten statement of J.M. Chambers, dated August 5, 2009 (NS000608)

14.  Handwritten statement of D.B. Callahan (Form 11050), dated August 5, 2009 (NS000609)

15.  Handwritten statement of T.E. Yarbrough (Form 11050), dated August 4, 2009 (NS000610)

16.  Handwritten statement of R.D. Peace, dated August 7, 2009 (NS000611)

17.  Plaintiff's hand-drawn diagram of hand brake wheel (Plaintiff Depo. Ex. "3")

18.  Industry Work Order 4349 for Route GD01 dated July 23, 2009 (NS000586-000592)

19.  G04 Textile Rubber Car Release and Order Form, dated July 23, 2009 (NS000593)

20.  All or any portion of Norfolk Southern Safety & General Conduct Rules (NS000001-000178)

21.  All or any portion of Norfolk Southern NS-1 Rules (NS000179-000321)

22.  All or any portion of Norfolk Southern Operating Rules (NS000322-000511)

23.    All or any portion of Norfolk Southern Thoroughbred Code of Ethics (NS001364-001412)

24.    Plaintiff's recorded statement (audio recording and transcript) to Linda Kurzenberger (August 19, 2009)

25.    Transcript of November 19, 2009 investigation (NS000637-000686)

26.    Plaintiff's tax returns for 2002-2010 produced by Plaintiff's counsel (CS000001-000363; CS000368-000370)

27.    Plaintiff's Wage History with Defendant (2006 -2010) (NS002295-002299)

28.    Employee History Inquiry (NS002256-002293)

29.    Description of Plaintiff's fringe benefits package (NS002294)

30.    T&E Summary Employee Information History Tickets (NS001198-001238)

31.    Seniority Roster List for Plaintiff (NS001347-0001348)

32.    Rule 26 Report of Michael Bernot, MD

33.    Rule 26 Report of Donna M. Kulick

34.    Letter from C.R. Prible, MD to S.K. Long dated November 9, 2009 regarding Plaintiff's MRI (NS001425)

35.    Letter to Plaintiff from Allon Wright regarding invitation to participate in vocational rehabilitation, dated December 9, 2010 (NS001240)

36.  Norfolk Southern Casualty Claim Medical Payment Inquiry (NS000798)

37.  The Railroad Employees National Health and Welfare Plan, Eff. July 1, 2007

38.  Brake stick

39.  Tax tables for federal and state taxes

40.  Brake wheel

41.  Any exhibit listed by Plaintiff

42.  Defendant reserves the right to amend this list

## Plaintiff's Objections to Defendant's Exhibits

1.  Plaintiff's Complaint [Doc. 01] **Objection: Relevance; Pleadings do not usually go out with the jury; likely to confuse the jury; lacks probative value.**

2.  Plaintiff's Responses and Objections to Norfolk Southern's Second Interrogatories and Second Request for Production of Documents **Objection: Relevance as to many of the responses; the Pleadings do not usually go out with the jury; many of the answers and documents are likely to confuse the jury; many of the answers and documents lack probative value.**

3.  Plaintiff's Response to Defendant's Statement of Material Facts for Which There is No Genuine Issue to be Tried [Doc. 61-2] **Objection: Relevance; Pleadings do not usually go out with the jury; likely to confuse the jury; unfairly prejudicial and lacks probative value.**

4.  Plaintiff's Notice of Withdrawal of John David Engle, Jr., as an Expert Witness [Doc. 62] **Objection: Relevance; Pleadings do not usually go out**

**with the jury; likely to confuse the jury; unfairly prejudicial and lacks probative value.**

5.  Form 22 (NS000713) **No objection.**

6.  Form 11131 (NS000902-000903) **No objection.**

7.  Norfolk Southern Report of Personal Injury/Illness Incident dated August 12, 2009 (NS000594) **Objection: Hearsay**

8.  Form 11050 signed by Plaintiff, dated August 4, 2009 (NS000605) **No objection.**

9.  Plaintiff's handwritten statement, dated August 4, 2009 (NS000604) **No objection.**

10. Plaintiff's "for clarification" statement (NS000775) **No objection.**

11. Handwritten statement of T.M. Lyons, dated August 4, 2009 (NS000606) **Objection: Authenticity, hearsay.**

12. Handwritten statement of Larry Carr (Form 11050), dated August 4, 2009 (NS000607) **Objection: Authenticity, hearsay.**

13. Handwritten statement of J.M. Chambers, dated August 5, 2009 (NS000608) **Objection: Authenticity, hearsay.**

14. Handwritten statement of D.B. Callahan (Form 11050), dated August 5, 2009 (NS000609) **Objection: Authenticity, hearsay.**

15. Handwritten statement of T.E. Yarbrough (Form 11050), dated August 4, 2009 (NS000610) **Objection: Authenticity, hearsay.**

16. Handwritten statement of R.D. Peace, dated August 7, 2009 (NS000611) **Objection: Authenticity, hearsay.**

**17.** Plaintiff's hand-drawn diagram of hand brake wheel (Plaintiff Depo. Ex. "3") **Objection: Drawn by Defense counsel. *See* Strickland Dep. 146:13-25; 152:14-16.**

18. Industry Work Order 4349 for Route GD01 dated July 23, 2009 (NS000586-000592) **No objection.**

19. G04 Textile Rubber Car Release and Order Form, dated July 23, 2009 (NS000593) **No objection.**

20. All or any portion of Norfolk Southern Safety & General Conduct Rules (NS000001-000178) **Objection: Irrelevant, as any negligence of Plaintiff may not be considered in this strict liability Safety Appliance Act case**.

21.  All or any portion of Norfolk Southern NS-1 Rules (NS000179-000321)
**Objection: Irrelevant, as any negligence of Plaintiff may not be
considered in this strict liability Safety Appliance Act case.**

22.  All or any portion of Norfolk Southern Operating Rules (NS000322-000511)
**Objection: Irrelevant, as any negligence of Plaintiff may not be
considered in this strict liability Safety Appliance Act case.**

23.  All or any portion of Norfolk Southern Thoroughbred Code of Ethics
(NS001364-001412) **Objection: Relevance.**

24.  Plaintiff's recorded statement (audio recording and transcript) to Linda
Kurzenberger (August 19, 2009)   **Objection: This, like a deposition
transcript, is a speaking exhibit and should not go out with the jury.**

25.  Transcript of November 19, 2009 investigation (NS000637-000686)
**Objections: Relevance. Also, this, like a deposition transcript, is a
speaking exhibit and should not go out with the jury.**

**26.**  Plaintiff's tax returns for 2002-2010 produced by Plaintiff's counsel
(CS000001-000363; CS000368-000370) **Objection: as to parts that are
not relevant.**

27. Plaintiff's Wage History with Defendant (2006 -2010) (NS002295-002299) **No objection.**

**28.** Employee History Inquiry (NS002256-002293) **Objection: Foundation, relevance, authenticity.**

29. Description of Plaintiff's fringe benefits package (NS002294) **No objection.**

30. T&E Summary Employee Information History Tickets (NS001198-001238) **No objection.**

31. Seniority Roster List for Plaintiff (NS001347-0001348) **No objection.**

32. Rule 26 Report of Michael Bernot, MD **Objection: Hearsay, like a deposition transcript, is a speaking exhibit and should not go out with the jury**

33. Rule 26 Report of Donna M. Kulick **Objection: Hearsay, relevance, like a deposition transcript, is a speaking exhibit and should not go out with the jury.**

34. Letter from C.R. Prible, MD to S.K. Long dated November 9, 2009 regarding Plaintiff's MRI (NS001425) **Objection: Foundation, Authenticity, Un-disclosed expert opinion, hearsay.**

35.     Letter to Plaintiff from Allon Wright regarding invitation to participate in vocational rehabilitation, dated December 9, 2010 (NS001240) **Objection: Foundation, relevance, hearsay.**

36.     Norfolk Southern Casualty Claim Medical Payment Inquiry (NS000798) **Objection: relevance, authenticity, hearsay.**

37.     The Railroad Employees National Health and Welfare Plan, Eff. July 1, 2007 **Objection: relevance, hearsay, authenticity**

38.     Brake stick **Objection: relevance**

39.     Tax tables for federal and state taxes **Objection: authenticity**

40.     Brake wheel **No objection.**

**41.**     Any exhibit listed by Plaintiff – **Objection: depending on the evidence, some might be objectionable.**

42.     Defendant reserves the right to amend this list

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| **CONNIE STRICKLAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | **NO.  4:10-CV-149-HLM** |
| | ) | |
| **NORFOLK SOUTHERN** | ) | |
| **RAILWAY COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ATTACHMENT "H-1"**

**PLAINTIFF'S TRIAL BRIEF**

## I.      INTRODUCTION

This is a personal injury action brought under the Federal Employers'
Liability Act, 45 U.S.C. § 51 et. seq. In this case, Plaintiff will demonstrate that the
Defendant railroad was in violation of a Federal Safety Appliance Act (FSAA)
and Federal Safety Regulations (FSR) promulgated by the Federal Railroad
Administration (FRA) regulations.

This Trial Brief is intended to assist the Court in understanding the law
that governs FELA and FSAA cases as well as some of the unique issues involved
in this particular case.

## II.     SUMMARY OF FACTS AND CONTENTIONS

## III.   ISSUES AND LAW

In this case the Defendant will be shown to be strictly liable to Plaintiff because of its violation of the FSAA and associated FRSs relating to hand brakes on rail cars.  A hand brake that is not efficient violates these rules.  A hand brake is not efficient if the quick release fails to function as intended. Nor is it efficient if, as here, it requires more than usual and customary force to operate it.  Here, the hand brake would not release when customary forces were used on it.  This required additional forces to be applied and caused Mr. Strickland to be injured. Strict liability will remove from the jury's consideration issues of contributory negligence by the Plaintiff.  With liability firmly established, Plaintiff will be entitled to the full range of compensatory damages allowed by the Federal Employers' Liability Act.

### A.   Federal Law Controls

This action arises under and is governed exclusively by the Federal Employer's Liability Act, 45 U.S.C.§51 *et. seq*.  ("FELA")  The FELA and the decisions construing the FELA constitute the controlling federal law governing the issues raised in the pleadings of this case.  *Brown v. Western Ry. of Alabama*, 338 U.S. 294; *Arnold v. Panhandle and Santa Fe Ry. Co.*, 353 U.S. 360; *Maynard v. Durham and Southern Railroad Co.*, 365 U.S. 160.

### B.   Federal Employers' Liability Act and Judicial Interpretations

The FELA is an Act that was passed by Congress for the benefit and protection of railroad employees and their families. Although it is generally a negligence-based system of compensation, the failure of a handbrake to comply with the FSAA and/or FSRs is itself an actionable wrong under the FELA. The Plaintiff not need to show negligence and the Defendant's diligence or good care is not relevant.

### C.    FELA Generally

The basic section of the FELA, 45 U.S.C.§ 51 provides:

> Every common carrier by railroad which engaging in commerce between any of the several states...shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce...for such injury or death **resulting in whole or in part** from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment. (Emphasis added)

### D.    Causation

In interpreting this remedial statute, the Court next has to consider the controlling judicial interpretation of the statutory words set forth in the above quoted sections, namely, "in part." The jury is authorized to find the Defendant

liable for any damages caused in whole or in part by the inefficient handbrake. The leading case announcing and setting forth this controlling principle, which has been applied and followed consistently, is that of *Rogers v. Missouri-Pacific Railroad Co.*, 352 U.S. 500 (1957) and *CSX Transportation, Inc. v. McBride*, 131 S.Ct. 2630, 2634 (2011).   The *Rogers* Court importantly refuted the term of *proximate* cause as being an improper test in an FELA action and then defined the test for a jury issue as:

> [W]hether the proof justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury...

*Rogers v. Missouri-Pacific Railroad Co.*, 352 U.S. 500.  This concept of "in whole or in part" was confirmed as the law of the land just this past summer in the *McBride* case.      Thus, the controlling test for a jury case is whether there is evidence of any probative value that some negligence of the railroad "played any part, even the slightest, in producing" the injuries for which damages are sought. *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108.  The jury should be charged accordingly on the issue of causation.  *DeLima v. Trinidad Corporation*, 302 F.2d 585 (2nd Cir. 1962) at pp. 587, 588.

### E.      Federal Safety Appliance Act (Hand Brake Act)

Ordinarily, a FELA claim requires a plaintiff to show that the railroad was negligent, although a relaxed standard of causation applies.  *Consolidated Rail*

*Corporation v. Gottshall*, 512 U.S. 532, 543, 114 S.Ct. 2396, 2404 (1994). However, the Supreme Court has "extended the reach of the principle of negligence *per se* to cover injuries suffered by employees as a result of their employers' statutory violations, even if the injuries sustained were not of a type that the relevant statute sought to prevent." *Gottshall,* 512 U.S. at 543 (citing *Kernan v. Am. Dredging Co.,* 355 U.S. 426, 432-36, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958)). Therefore, if an employee can establish a violation of the Federal Safety Appliance Act, the "negligence" component of a FELA claim is established as a matter of law, and "only causal relation is in issue." *Carter v. Atlanta & St. Andrews Bay Ry. Co.,* 338 U.S. 430, 434, 70 S.Ct. 226, 94 L.Ed. 236 (1949); *see also Urie v. Thompson*, 337 U.S. 163, 189 (1949); 45 U.S.C. § 53. Proof of a violation of the Federal Safety Appliance Act satisfies Plaintiff's duty to prove negligence and is tantamount to strict liability. *Urie v. Thompson*, 337 U.S. 163, 189, 69 S.Ct. 1018 (1949).

What used to be called the Handbrake Act (45 U.S.C. § 11) is now codified at 49 U.S.C. § 20302, the Federal Safety Appliance Act.  The Act includes the following language relevant to handbrakes:

General requirements

(a) General. - Except as provided in subsection (c) of this section and section 20303 of this title, a railroad carrier may use or allow to be used on any of its railroad lines -
(1) a **vehicle** only if it is equipped with -
     (B) secure sill steps and **efficient hand brakes**; and

The Act is supplemented by FSR regulations.  Pertinent here is 49 C.F.R. § 231.2 which provides:

> (a) Handbrake—(1) Number. One efficient handbrake which shall operate in harmony with the power brake installed on the car. Each such handbrake shall (i) provide the same degree of safety as the design shown on plate A, or (ii) provide the same degree of safety as that specified in §231.27.

The liability of a railroad in an FELA action for an injury resulting from the violation of the Safety Appliance Act or a Federal Safety Regulation is not based upon the railroad's negligence.  Violation of the FSAA and FSR imposes strict liability upon the railroad.  Regulations issued by the Secretary of Transportation have the same force and effect as a statute.  If a jury finds that the railroad violated either the FSAA or FSR in this case, and that the railroad's violation of the statute or regulation had some effect in causing the Plaintiff's injuries, then the Defendant will be strictly liable, or liable as a matter of law.  Evidence of good care by the Defendant railroad is not a defense to a claim based on a violation of a Federal Safety Regulation or statute.  *Pratico v. Portland Terminal Co.*, 783 F. 2d 255 (1st Cir. 1985); *Central of Georgia RR Co. v. Lightsey*, 198 Ga. App 59, 400 SE.2d. 652 (1990);  45 U.S.C. § 53; 45 U.S. C. § 437(c).

### (i).    Definition of Efficient

A critical term in this case is "efficient".  This is because, as noted, the FSAA requires that all cars have efficient hand brakes.  This Court has already

considered this issue in relation to the summary judgment pleadings.  But, as this is an important term and will be hotly disputed when it comes time to instruct the jury, some additional consideration is merited.

Congress did not define this critical word. However, as expressed in *Myers v. Reading Co.*, 331 U.S. 477, 483; Section 170, Page **2** of **15**67 S.Ct. 1334, 1338; 91 L.Ed. 1615 (1947), quoting from *Didinger v. Pennsylvania R. Co.*, 39 F.2d 798, 799 (6th Cir.1930):

> 'There are two recognized methods of showing the inefficiency of hand brake equipment. Evidence may be adduced to establish some particular defect, or the same inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner.'

*See also Spokane & I. E. R. Co. v. Campbell,* 241 U.S. 497, 505; 36 S.Ct. 683, 687; 60 L.Ed. 1125 (1916), for an illustration of the kind of evidence that establishes a violation of the Safety Appliance Act. The terms efficient and inefficient as used in 45 U.S.C.A. § 11 have been defined as follows: "Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect: incapable; incompetent; inadequate." *Spotts v. Baltimore & O.R. Co.,* 102 F.2d 160, 162 (7th Cir.1938).

It is also appropriate to turn to the dictionary, as Congress may be

assumed to have used the work in its ordinary meaning. When this process if followed for the word "efficient" the dictionaries in this writer's office consistently define the word along the lines of having maximum productivity with minimum wasted effort. *Blacks Law Dictionary Fifth Edition*: "[a]dequate in performance or producing properly a desired effect"; *Funk & Wagnalls Standard Dictionary*: "[p]roductive of results with a minimum of wasted effort"; *The American Heritage College Dictionary Third Edition*: "[a]cting or producing effectively with a minimum of waste, expense, or unnecessary effort. Exhibiting a high ratio of output to input."

Here, the evidence will be that the quick release lever did not produce the desired effect. Additionally, the hand brake wheel would not operate with the standard effort but instead required wasted unnecessary effort to make it release and operate as it was supposed to do.

In passing the FELA, Congress had "'humanitarian' and 'remedial goal[s]'. *CSX v. McBride*, 131 S.Ct. 2630, 2632 (2011). The purpose of the hand brake statue is to create an absolute imperative duty on railroads to protect workers from hand brakes that do not operate as they should. *E.g., Illinois C. R. Co. v. Williams*, 242 U.S. 462 (1917); *Shields v. Atlantic Coast Line, R. Co.*, 350 U.S. 318 (1956).

The bottom line being that if a hand brake fails to operate in response to the minimal forces that are usually required for its use it is inefficient and the jury, to comply with Congressional intent, should be so instructed.

Courts that have considered the definition of "efficient" have made it clear that it is a broad term and incapable, incompetent, inadequate, and defective in operation. *Myers v. Reading Co.*, 331 U.S. 477, 91 L.Ed 1615, 67 S. Ct. 1334 (1947). There is no accepted definition of "efficient" that includes the concept of broken or defective because the term "efficient" is not the opposite of the word "defective". It is simply not necessary for Plaintiff to prove the hand brake in question was defective for Defendant to have violated the Safety Appliance Act or Regulations. *Thayer v. Denver, etc. R. Co.*, 845 P. 542 (N.M. 1919). As discussed in the summary judgment pleadings, numerous courts have recognized that a handbrake that is difficult to release is a danger that makes the handbrake inefficient. *Myers v. Reading Co.*, 331 U.S. 477, 483, 67 S.Ct. 1334, 1338, 91 L.Ed. 1615 (1947); *Thayer v. Denver, etc. R. Co.*, 845 P. 542 (N.M. 1919).

Courts have universally defined "efficient" as means adequate in performance to produce properly a desired effect with reasonable effort, and "inefficient" means not producing or not capable of producing the desired effect without wasted or unnecessary effort. The law is so strongly in the railroad worker's favor that "the mere failure of a safety device to operate properly at the time the employee is injured is sufficient to show that it is defective even if it operates properly before and after the incident in question." *Phillips v. Chesapeake & O. Ry.*, 475 F.2d 22, 25 (4th Cir. 1972) (citing *Myers v. Reading Co.*, 331 U.S. 477,

483 (1947)); *Richardson v. Consolidated Rail Corp.*, 17 F.3d 213 (7th Cir. 1994). It cannot be overemphasized that "[b]ecause equipment failure itself suffices to fasten liability upon the railroad, an injured rail worker need not show a defect in the … [safety appliance] to recover for his injuries." *Reed v. Philadelphia, Beth. & N. E. R. R.*, 939 F.2d 128, 130 (3rd Cir. 1991). "Even a single failure . . .[is] sufficient to support the jury's verdict." *Ross v. Duluth, M. & I. R. Ry.*, 281 N.W. 76, 80 (Minn. 1938). Any motions for directed verdict must be denied if there is proof, even though entirely circumstantial, from which the jury may with reason infer that the railroad's violation of the Safety Appliance Act or a Federal Safety Regulation, played any part, however small, in the injury which is the subject of this lawsuit. *Rodgers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 508 (1957); *Weese v. Chesapeake & Ohio Railway Co.*, 570 F.2d 611 (6th Cir. 1978).

Although the portion of the FSAA at issue here relates specifically to hand brakes, the FSAA also requires efficient coupler devices. Thus, reference to cases about the operation of automatic couplers are instructive. A succinct statement of the law applicable to uncoupling operations is as follows:

> "'If a coupler fails to work when an honest and reasonable effort is made to operate it, under circumstances and in the manner it is designed to be operated, we conclude the law is not complied with.'"

*Henwood v. Gary*, 196 SW2d 958, 960 (Tex. Civ. App. 1946) quoting *Burho v. Minneapolis & St. L. Ry. Co.*, 141 N.W. 300, 302 (Minn. 1913). The Court in

*Southern Pacific Co. v. Mahl*, 406 F.2d 1201 (5th Cir. 1969) approved a jury charge of essentially the same character when it approved the following:

> Thus if you should find from the evidence that on the occasion in question the coupler was operated by the plaintiff with due care in the normal manner but failed to uncouple on the particular occasion in question, it is immaterial whether the coupler functioned properly before or after the particular occasion in question.

*Id.* at 1202; *e.g., Carter v. Atlanta & St. Andrews Bay Ry.,* 33 U.S. 430, 434 (1949). Changing the words from coupler to hand brake illustrates how the jury in this case should be instructed.  Indeed, Mr. Strickland tried to use the hand brake in the normal manner but it failed to release.

### F.      Contributory Negligence and Assumption of Risk

#### (i).     Contributory Negligence

Contributory negligence has no place in the FSAA or FSR aspects of this case and the jury must be carefully instructed that if they find a violation of a FSAA or FSR played any part in causing this incident that it must ignore any contributory negligence of the Plaintiff.

One of the most important aspects of a case resting on a violation of a FSAA and FSR is that contributory negligence is irrelevant as a matter of law. *Pratico v. Portland Terminal Co.,* 783 F. 2d 255 (1st Cir. 1985); 45 U.S.C. §53, 54a.  If the defect in the hand brake contributed to the cause of Plaintiff's injury any contributory negligence by him cannot be allowed to diminish the amount of his

recovery.  *Bass v. Seaboard AirLine R. Co.*, 205 Ga. 458 (1949). If the violation of a

Federal Safety Appliance Act contributed to the cause of Plaintiff's injuries, any

contributory negligence by him cannot be allowed to diminish the amount of his

recovery.  *E.g.*, *Gowins v. Penn. R. Co.*, 299 F.2d 431 (1962), cert. denied 371 U.S.

824; *Yentzer v. Pennsylvania R. Co.*, 239 F.2d 785 (1957); *Bass v. Seaboard Air Line R.

Co.*, 205 Ga. 458 (1949). This is true no matter how negligent the railroad

employee was with respect for his own conduct.  The best example of this is

found at *Coray v. S. Pacific Co.*, 335 U.S. 520 (1949) in which a railroad employee

was following a train down the track in a one-man motorized car when the train

stopped unexpectedly.  The employee could have stopped in time had he been

paying attention.  The Court held that the employee's negligence could have no

effect on his rights to recover because the injury was caused in whole or in part

by a violation of a Safety Appliance Act.

### (ii).   Assumption of Risk

It is mandatory that the Defendant railroad not be permitted to interject

into this action the forbidden defense of assumption of risk under the guise of

contributory negligence.  In cases arising under the Federal Employers' Liability

Act, the 1939 Amendment removed as a matter of law the defense of assumption

of risk and every vestige of it.  45 U.S.C.§ 54.  *Tiller v. Atlantic Coast Line R. Co.* 318

U.S. 54.   Contributory negligence presents the issue of whether the plaintiff

performed his duties with reasonable care under all the facts and circumstances

present, while assumption of risk involves the knowledge of plaintiff that he performed his job under circumstances which he well may have known to involve risks. Knowledge of such a risk on the part of the plaintiff is not contributory negligence, but involved the assumption of risk, which doctrine has absolutely been abolished as a defense under the Act.  In this case, the Defendant railroad must be prevented from arguing that Plaintiff should be barred from recovery because he knowingly undertake the dangerous task of operating handbrake, or of continuing to operate a handbrake that was not functioning properly.

As noted above, every vestige of assumption of risk was to be obliterated by the 1939 Amendment to 45 U.S.C. § 54.  *Tiller v. Atlantic Coast Line R. Co.*, 318 U.S. 54, 58, 63 S. Ct. 444, 446-447 (1943).  Although an instruction on assumption of risk is not usually to be given, *see, generally, Clark v. Burlington Northern*, 726 F.2d 448, 452 (8th Cir. 1984), where there is evidence which could allow a jury to find assumption of risk a preventative charge should be given.  *Bylar v. Wabash Railroad*, 196 F. 2d 9, 13 (8th Cir. 1952); *Koshorek v. Pennsylvania Railroad Company*, 318 F2d 364, 369-370 (3rd Cir. 1963); *Ford v. Louisville & N. R. Co.*, 355 Mo. 362, 196 S.W. 2d 163, 169 (1946); *Harp v. Illinois Central Gulf R. Co.*, 55 Ill. App. 3d 822, 370 N.E. 826, 829 (1977); *see also*, *Atlantic Coastline Railroad Company v. Smith,* 107 Ga. App. 384 (1963); *Southern Railway Company v. Miner,* 196 Ga. App. 183 (1990).

As the Georgia Court of Appeals has noted, even lawyers are sometimes confused by theories of contributory negligence and assumption of risk. *Southern Railway Company v. Miner,* 196 Ga. App. 183 (1990). A charge advising the jury that Plaintiff did not assume the risk will prevent this confusion.

### G.    Issues of Damage and Evidence

The usual rules of damages in personal injuries will apply, namely, the plaintiff is to be compensated fully and adequately for his injuries and all consequences and losses resulting therefrom. In connection with the issue of damages, as well as perhaps other issues in this case, certain questions may arise with respect to evidence. We do not attempt to and cannot anticipate all such issues. We do point out the following, however, which may arise.

Questions of the measure of damages arising under the Federal Employers' Liability Act are federal in character and federal common law applies. *Seaboard System Railroad v. Taylor,* 196 Ga. App. 847, 850, 338 SE2d 23, 26 (1985)(citing *Norfolk & Western R. Co. v. Liepelt,* 444 U.S. 490 (1980); *Chesapeake & Ohio R. R. Co. v. Kelly,* 241 U.S. 485 (1916)). Issues of damages, including jury charges, are determined by federal law. *Liepelt* at 493. In fact, "it is well settled that the propriety of jury instructions concerning the measure of damages in an FELA action is an issue of 'substance' determined by federal law." *St. Louis R.R. Co. v. Dickerson*, 470 U.S. 409, 411 (1985)

### H.    SOLE PROXIMATE CAUSE IS NOT A DEFENSE

Unable to prove contributory negligence in the usual sense, the Defendant will likely attempt to show that the Plaintiff is the sole cause of his injuries. There is no evidence whatsoever that the sole cause of Plaintiff's injuries is his own actions – Without the inefficient handbrake, Plaintiff would not have been injured. The evidence will be that the Defendant's negligence and violations of the FSAA and FSR contributed, in whole or in part, to Plaintiff's injuries.

Despite this evidence, the Defendant railroad is expected to attempt to avoid liability by arguing that Plaintiff's continuing efforts to use the handbrake despite its failures was the sole cause of his injury.  This cannot be allowed.

In cases resting on violations of Safety Appliance Acts and FRA regulations, the defense of sole proximate cause is looked upon with disfavor by the courts.  *Almendarez v. Atchison, Topeka & Santa Fe Railway Co.*, 426 F.2d 1095, 1098 (5th Cir. 1970).  A sole cause or sole proximate cause defense is an effort to engraft common law principles onto the FELA.  *Almendarez, supra*, at 1097.  This is inappropriate because under the FELA railroads are held to a much higher standard than under the common law.  *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500 (1957); *Urie v. Thompson,* 337 U.S. 163 (1949).  The liberal standards of the FELA are "an avowed departure from the rules of the common law."  *Sinkler v. Missouri Pacific Railroad Co.*, 356 U.S. 326 (1958).

This departure from the common law is particularly apparent in the area of causation.  Under the FELA, causation is established if the railroad's conduct

"played any part, even the slightest, in producing" the injury.  *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500 (1957).  Indeed, under the FELA causation can be established "when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference."  *Rogers, supra*, 352 U.S. at 508.  In the face of this standard of causation, a defense which focuses on the plaintiff's conduct as the sole cause or the sole proximate cause of the injury has a great likelihood of being confusing or misleading.  This is especially true where, as here, the Defendant railroad is prohibited from arguing that the Plaintiff's negligence should be considered.  Sole proximate cause serves only to insert this illegal defense where it cannot be inserted.

A good explanation of why sole proximate cause jury instructions are viewed with disfavor by the courts was given in *Paige v. S. Louis Southwestern Railway Co.*, 349 F.2d 820 (5th Cir. 1965).  That Court explained:

> [O]rdinarily in FELA cases there is really no place for this issue in the jury submission . . . this effort to cross examine the jury . . . leads only to confusion and a proliferation of metaphysical terms scarcely understandable to the most astute scholar. . . .
>
> Of course the substantive law recognizes that if the negligence of the employee is the sole cause of the injury or death, there is no liability.   This is sometimes spoken of as the employee's

> contributory negligence being the sole proximate cause, but this is both an inaccurate use of the term "contributory" and seems to be wholly unnecessary since a jury, honestly determining that the injured employee's actions were the sole cause of injury, necessarily finds (either on a general charge or by special interrogatories) that no act of the railroad, even though found to be negligent, played any part in bringing about the injury. . . . We ought to avoid those practices which "distract the jury's attention from the simple issue of whether the carrier was negligent and whether that negligence was the cause, in whole or in part, of the plaintiff's injury."

349 F.2d 826-287 (citations omitted).

Safety regulations and statutes impose an absolute, imperative, and unqualified duty upon the railroad. *Shields v. Atlantic Coast Line Railroad Co.*, 350 U.S. 318 (1956); *Tiller v. Atlantic Coast Line Railroad Co.*, 323 U.S. 574 (1945); *Baltimore & Ohio Railroad Co. v. Hooven*, 297 F. 19 (1924).  Negligence is not an issue under these theories.  Indeed, the railroad is not excused for a violation of these acts by any showing of care, regardless of how assiduous.  *Myers v. Reading Co.*, 331 U.S. 477 (1947); *Brady v. Terminal Railroad Association of St. Louis*, 303 U.S. 10 (1938).

Given this background, it is inappropriate to give a jury instruction, or allow much latitude in defense, which injects negligence issues into the strict liability aspects of the case and asks the jury to determine whether the plaintiff was "careless" or "negligent" or the sole cause of his injuries.  At best, this is confusing; at worst, it is an improper introduction of negligence principles into the strict liability case.

Common sense further dictates against allowing any argument concerning sole proximate cause.  The handbrake was inefficient because it would not operate the way it was supposed to; and, further, because Plaintiff was injured when operating the hand brake, it cannot be said that his conduct, alone, caused his injuries.  If he would not have been injured but for the fact that the handbrake was inefficient and did not operate as intended, he cannot be said to have unilaterally caused his injury.  Accordingly, his conduct alone cannot be the sole cause of his injury.

## I.    MEDICAL CAUSATION IS RELAXED

For Plaintiff to establish causation, he merely needs to show that the Defendant's wrongful conduct was a cause "in part."  On this point, the United States Supreme Court has held that a case must be submitted to the jury if a conclusion can be reached with reason from the evidence that the railroad employer's negligence "played any part, even the slightest, in producing" the injuries for which damages are sought.  It makes no difference, moreover, if the

evidence will support other or contrary conclusions denying liability.   The leading case announcing and setting forth this controlling principle, which has been applied and followed consistently, is that of *Rogers v. Missouri-Pacific Railroad Co.*, 352 U.S. 500 (1957).

The *Rogers* case involved a trackman injured when a passing train fanned some burning weeds causing Plaintiff to react thereby losing his footing in a walkway area.   The walkway area was described in the Court's opinion as "loose . . . and sloping" instead of the usual flat surface giving firm footing for workmen.   This loose and sloping condition was a basis for negligence that the Court held caused in whole or in part the injury to the Plaintiff.

Further in the opinion the *Rogers* Court more importantly refuted the term of *proximate* cause as being an improper test in an FELA action and then defined the test for a jury issue as:

> [W]hether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the employees injury...

*Id. at* 500.

Thus, the controlling test for a jury case is whether there is evidence of any probative value that some negligence or violation of a Safety Appliance Act or Federal Safety Regulation by the railroad "played any part, even the slightest, in producing" the injuries for which damages are sought.   *Gallick v. Baltimore &*

*Ohio Railroad Co.*, 372 U.S. 108.  The jury should be charged accordingly on the issue of causation.  *DeLima v. Trinidad Corporation*, 302 F.2d 585 (2nd Cir. 1962) at pp. 587, 588.

This long-standing black letter law was recently confirmed by the Supreme Court in *CSX Transportation, Inc. v. McBride*, 131 S.Ct. 2630, 2634 (2011), where the court held that " . . . it is not error in a FELA case to refuse a charge embracing stock proximate cause terminology. Juries in such cases are properly instructed that a defendant railroad "caused or contributed to" a railroad worker's injury "if [the railroad's] negligence played a part—no matter how small—in bringing about the injury."

### J.    PAIN AND SUFFERING; NATURE AND EXTENT OF INJURIES

Plaintiff is entitled to damages for pain and suffering and the nature, extent and duration of the injuries incurred and the consequences therefrom.  This includes, of course, any mental or emotional damage or disorder.

Such damages, as proved by the evidence, should be awarded for the past, that is, from the date of the injuries to the date of trial, and for the future.

It should be pointed out that the requirement of finding the present value of future loss of earnings and fringe benefits does not apply to future pain and suffering, and the jury should be so instructed.  *Waterman Steamship Corp. v. Rodriquez*, 290 F. 2d 175 (1st Cir. 19610); *Torres v. Hamburg-Americka Line*, 353 F.Supp. 1276 (D. Puerto Rico 1972); *Culley v. Pennsylvania R. Co.*, 244 F. Supp. 710

(D. Del. 1965); *Hanson v. Reiss Steamship Co.*, 184 F. Supp. 545; *Texas & Pacific Rv. Co. v. Buckles*, 232 F. 2d 257 (5th Cir. 1956); *Chicago & N.W.Ry. Co. v. Candler*, 282 F. 881 (8th Cir. 1922); and *Taylor v. Denver & Rio Grande Western R. Co.*, 438 F. 2d 351 (10th Cir. 1971).

### K.   COLLATERAL SOURCE RULE

Under the controlling decisions of the United States Supreme Court, the receipt of or the availability of collateral benefits and any reference thereto are not admissible for any purpose in an action under the Federal Employers' Liability Act.   *Eichel v. New York Central R. Co.*, 375 U.S. 253 (1963); *Tipton v. Socony Mobile Oil Co.*, 375 U.S. 34; *Caughman v. Washington Terminal Co.*, 345 F.2d 434 (D.C. Cir. 1965).

### L.   TAXES

If such a jury charge is requested, the jury can be instructed that the lump sum award for personal injuries or wrongful death is not subject to federal income tax.  *Norfolk & Western Ry. Co. v. Liepelt,* 444 U.S. 490 (1980).  Plaintiff will offer a simple and effective jury charge to answer these tax issues.

### M.   DEFINITION OF LOST WAGES

Plaintiff is seeking past and future lost wages benefits as a result of being unable to work to the end of his work life.  The wage loss that is recoverable in an FELA case is net wage loss - not gross wage loss.  Defendant is expected to

agree that Plaintiff must seek only his net wages.  Plaintiff will offer the testimony of an expert economist to assist the jury in reaching this figure. However, there is sometimes an effort by some railroad lawyers to attempt to confuse the Court about the definition of "net wages" to be used in wage loss calculations.  This is unnecessary as the formula is simple.  Net wages, for purposes of calculating wage loss in a FELA action, are gross wages less state and federal income taxes and any employment related expenses that will not be incurred by virtue of being unable to work.  *Norfolk & Western v. Chittum*, 251 Va. 408, 468 S.E.2d 877 (1996), cert. denied U.S. (1996), and *Norfolk Southern Railway Co. v. Perkins*, 224 Ga. App. 552, 481 S.E.2d 545 (1997).

## N.    DEFENDANT'S BURDEN TO PROVE FAILURE TO MITIGATE DAMAGES

Defendant has the burden to prove that Plaintiff failed to mitigate his damages. Defendant will have the burden to prove, with sufficient facts so that the jury will not be required to guess or speculate, the income Plaintiff will be able to earn if he uses reasonable care to satisfy his duty to mitigate his damages.

The concept that the Defendant has the burden of proving its affirmative defenses is embodied in the U.S. Eleventh Circuit, District Judges Association, *Pattern Jury Instructions, Civil Cases*, which provides at 6.1 in the Federal Employers' Liability Act section regarding contributory negligence that "[t]his is a defensive claim and the burden of proving that claim, by a preponderance of the evidence, is upon the Defendant . . . ." The concept is equally applicable to the affirmative defense of failure to mitigate.  The burden for this defense is also

on the Defendant and will not be met in any fashion.  W. Prosser, *Law of Torts*, 4th Ed., §65, pp. 416, 422-424.

Without being provided with the wages and benefits which the Plaintiff might enjoy if he is ever able to perform another job, there is no way the jury can calculate the reduction in damages to which Defendant claims it is entitled as a result of any alleged future failure of the Plaintiff to exercise reasonable care in mitigating his damages.  The jury cannot be allowed to guess at the amount it should use to reduce the future damages.  Because wage loss is a special damage, as opposed to a general damage, it must be proved with some degree of specificity.  For example, in this case Plaintiff will offer testimony of what the net present value of Plaintiff's future wage and benefit loss will be.  Defendant will offer no proof at all to establish the net present value of the benefits and wages of any job that Plaintiff might obtain at some unknown point in the future.  Without this data, the amount shown by Plaintiff's economist, Dr. Rushing, stands unchallenged as to Plaintiff's future wage loss.

The jury is authorized to look only to actual data in reducing Plaintiff's damages.

> [T]he plaintiff is prima facie entitled to the stipulated compensation for the whole time.  If so, the burden of proof in regard to his employment elsewhere, or his ability to obtain employment, must necessarily rest on the defendant.  All evidence in mitigation is for the defendant to give.  In its nature it is affirmative, and hence it is for him to prove who asserts it.

*McAleer v. McNally Pittsburgh Manufacturing Co.,* 329 F.2d 273 (3rd Cir. 1964).

Jurors cannot be allowed to guess about wage issues in damages cases.  For example, in *Ballentine v. Central Railroad of New Jersey*, 460 F.2d 540 (3rd Cir. 1972), the sole question was whether the jury in an FELA case was given

sufficient guidance to allow it to reduce lost earnings to their present worth. The court held that the jury must be provided sufficient evidence so that it can "act rationally and 'not upon mere conjecture and guess'". *Id.* at 544. Consistent with this holding is the opinion of the Georgia Court of Appeals in *Glenn McClendon Trucking Co., Inc. v. Williams*, 183 Ga. App. 508, 359 S.E.2d 351 (1987), in which it was held that "'[t]he burden is upon the party asserting that the opposite party could have lessened his damages, and such proof must include sufficient data to allow the jury to reasonably estimate how much the damages could have been mitigated.' [Cit.]". In order to avoid conjecture, guessing, and to allow reasonable estimates, the jury must have "sufficient data".

It is the Defendant's burden to prove that alternative work, of a kind which Plaintiff could perform, will be available. This is consistent with "[t]he universal rule is that an employee's damages will be mitigated only if the employer proves that a similar employment opportunity was available." *Ballard v. El Dorado Tire Co.*, 512 F.2d 901, 905 (5th Cir. 1975); *see also* Dobbs, *Remedies* § 12.25, at 925; Annotation, *supra*, § 6, at 646; *Restatement (Second) of Agency* § 918, Comment (d) (1957).

<div style="margin-left:50%">

WARSHAUER LAW GROUP, P.C.

By:   s/ Michael J. Warshauer
     Michael J. Warshauer
     Georgia Bar No. 018720
     Trent Shuping
     Georgia Bar No. 159083

3350 Riverwood Parkway, Suite 2000
Atlanta, Georgia 30339-3372
404.892.4900 Tel
404.892.1020 Fax

*Attorneys for the Plaintiff*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date served the above and foregoing document to all parties. It is an attachment to the proposed pre-trial order which is being distributed by using the CM/ECF system, which will automatically send email notification to all attorneys of record.

This 26th day of October, 2012.

WARSHAUER LAW GROUP

By:___/s/  Trent Shuping____
Michael J. Warshauer
Georgia Bar No. 018720
Trent Shuping
Georgia Bar. No. 159083

3350 Riverwood Parkway
Suite 2000
Atlanta, GA 30339
(404) 892-4900

## ATTACHMENT "H-2"

*Defendant's Trial Brief*

## I.     FELA and FSAA

"Efficient means adequate in performance; producing properly a desired effect." *Myers v. Reading Co*., 331 U.S. 477, 483 (1947).   A hand brake is inefficient if there is "a failure to function, when operated with due care, in the normal, natural, and usual manner." *Id.*  The plaintiff "bears the burden of proving that the hand brake was not working efficiently when he was injured, and his testimony is not conclusive." *Richardson v. Consolidated Rail Corp*., 17 F.3d 213, 217 (7th Cir. 1994).   There is insufficient evidence to support a liability verdict where a device is misused rather than actually defective.  *See Brady v. Southern R. Co*., 320 U.S. 476, 484 (1943), *disapproved in part on other grounds by CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2639 n.4 (2011) (affirming judgment to railroad where the derailer in question "was sufficient for ordinary use, and the carrier was not obliged to foresee and guard against misuse of the derailer, even though the misuse occurred as often as the evidence indicated.  It was the wrongful use of the derailer that immediately occasioned the harm.")

Critical to the FELA plaintiff's case is some evidence of a causal connection between the employer's alleged negligence and the injury claimed. *McCann v. Ill. Central Railroad Co*., 711 F. Supp. 2d 861, 872 (C.D. Ill. May 12, 2010). "Expert testimony is generally required to establish a causal connection between an accident and an injury unless the connection is the kind that would be obvious to laymen, such as a broken leg from being struck by an automobile." *Schmaltz v. Norfolk & Western Ry. Co*., 896 F. Supp. 180 (N.D. Ill. Aug. 30, 1995). *See also Jett v. CSX Transp., Inc.,* 2009 U.S. Dist. LEXIS 28750 (E.D. Ky., Mar. 31, 2009) (finding insufficient evidence from which a reasonable jury could draw an inference of causation where in the absence of admissible expert testimony, "[t]he only remaining evidence of causation is plaintiff's testimony that his shoulder hurt sometimes while pulling levers at work.")

While the FELA does not permit the affirmative defense of contributory negligence to bar an employee's claim, the affirmative defense of sole proximate cause is widely recognized in federal law. *See Toth v. Grand Trunk Railroad*, 306 F.3d 335 (6th Cir. 2002); *Walden v. Illinois C. G. Railroad*, 975 F.2d 361 (7th Cir. 1992); *Beimert v. Burlington Northern, Inc.*, 726 F.2d 412 (8th Cir. 1984); *Magelky v. BNSF Ry. Co*., 491 F. Supp. 2d 882 (D.N.D. Jun. 14, 2007).

2

Accordingly, "[i]f the plaintiff's negligence was the sole cause, then the violation of the Safety Appliance Act could not have contributed in whole or in part to the injury." *Biemart* at 414. *See also Toth* at 351-52 (finding that where the plaintiff was the only witness to the accident, his inconsistent testimony and railroad safety rules provided basis that the alleged injury-causing incident could have resulted solely from his improper conduct, which bars liability); *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088 (4th Cir. 1987) (affirming judgment for railroad in finding that dirty condition of locomotive windows hampering visibility was due to the plaintiff's own failure to clean the windows as part of his own inspection); *Kelson v. Cent. of Ga. R.R.*, 234 Ga. App. 200, 205-08, 505 S.E.2d 803 (1998) (affirming summary judgment to railroad on FELA and FSAA claims where the plaintiff's actions in riding an end ladder violated company rules and his injuries resulted from his "independent, inexplicable, and ill-conceived" decision to ride between railcars).

The jury should consider only after tax income in determining lost past and future wages in a FELA case. *Norfolk and Western Railway Co. v. Liepelt*, 444 U.S. 490, 493-94, *rehg denied*, 445 U.S. 972 (1980); *Jones & Laughlin Steel Corp. v. Pfeiffer*, 462 U.S. 523, 534 (1983). Since the true measure of damages is the

3

disposable or after tax income, all federal and state taxes, including Railroad Retirement Tier I and Tier II taxes, and business costs and expenses employee will not incur as a result of injuries must be subtracted from the actual wage lost. *See Rachel v. Consolidated Rail Corp.*, 891 F. Supp. 428 (N.D. Ohio 1995); *Edwards v. Atchison & Topeka S.F. Rwy.*, 684 N.E.2d 919 (Ill. App. 1997). *Norfolk Southern Railway Company v. Perkins,* 224 Ga. App. 552, 481 S.E.2d 545 (1997) is incorrect and against the weight of authority under FELA.

## II.     Spoliation

In this case, Defendant will be requesting the Court to exclude any expert liability testimony Plaintiff may present and for a spoliation charge to be given to the jury based on Plaintiff's admitted failure to identify the railcar containing the hand brake that allegedly injured him.

Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation and may warrant exclusion of evidence when key evidence has been destroyed. *Flury v. Daimler Chrysler Corp*., 427 F.3d 939, 944 (11th Cir. 2005). Sanctions are "intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Gratton v. Great Am. Communs.*, 178 F.3d 1373, 1374 (11th Cir. 1999). The

4

district court has the broad discretion to impose sanctions. *Flury,* at 944. In the Eleventh Circuit, federal law governs the imposition of spoliation sanctions but courts may recognize principles from state cases. *Id.* (applying Georgia law). Trial courts consider the following five factors: 1) prejudice to the non-spoliating party as a result of destruction of evidence; 2) whether prejudice is curable; 3) practical importance of the evidence; 4) whether the spoliator acted in good or bad faith; and 5) potential for abuse if expert testimony about evidence was not excluded. *Bridgestone/Firestone North American Tire, LLC v. Campbell*, 258 Ga. App. 767, 768-79, 574 S.E.2d 923 (2002).

"As sanction for spoliation of evidence, a Court may 1) dismiss the case, 2) exclude expert testimony, or 3) issue a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Kraft Reinsurance Ir., Ltd. v. Pallets Acquisitions, LLC*, 845 F. Supp. 2d 1342, 1360 (N.D. Ga. 2011).

In *Campbell*, *supra*, the plaintiff sued the defendant car manufacturer and tire companies after his vehicle rolled over in a single-car accident. Before filing suit, the plaintiff allowed his insurance company to dispose of the vehicle and permitted his forensic engineer to discard the tires. The court found that the defendants were incurably prejudiced by the destruction of evidence and noted that

plaintiff's actions rendered "a full defense impossible." *Campbell* at 769. While the defendants sought to have the plaintiff's complaint dismissed or photographs of the vehicle and tires excluded, the trial court crafted a "viable" remedy upheld on appeal by excluding  the plaintiff's expert's testimony based on the inspection of the vehicle and tires and giving a spoliation charge to the jury. *Id.* at 771. *See also AMLI Residential Properties, Inc. v. Georgia Power Co.*, 293 Ga. App. 358, 667 S.E.2d 150 (2008). (affirming trial court's exclusion of evidence through imposition of spoliation sanctions where the defendant power company was prejudiced by not being afforded the opportunity to examine a ground rod alleged to be source of a fire).

## III.    Improperly identified or disclosed "expert" witness or testimony.

Defendant will be requesting the Court to exclude any "expert" witnesses that have been improperly and/or untimely identified pursuant to the local rules and this Court's rules.

Defendant objects to any introduction of evidence under Fed. R. Evid. 702, 703, or 705 offered by lay witnesses who were neither timely identified as testifying experts nor properly disclosed as experts pursuant to Fed. R. Civ. Pro. 26(a) and LR 16.4 & 26.  For example, neither Plaintiff nor his co-workers have

been properly or timely disclosed as experts and should not be allowed to opine that the handbrake in question was "inefficient" or "defective." *See Jett v. CSX Transp., Inc*., 2009 U.S. Dist. LEXIS 28750 at *9 (excluding treating physician's opinion as to causation where no written report required by Rule 26 was provided).

An opinion regarding the handbrake efficiency requires scientific, technical or specialized knowledge beyond the expertise of Plaintiff and his co-workers. *See, e.g. Rice v. Cincinnati, New Orleans & Pac. Ry. Co*., 920 F. Supp. 732, 737-38 (E.D. Ky. 1996) (*citing Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) in "[s]crutinizing the proffered testimony of plaintiff's fellow trainmen…it is readily apparent that they do not have the qualifications to offer expert opinion that the engine cab design is unsafe…[s]uch questions are beyond the expertise of the proffered trainmen and address themselves to an expert in ergonomics or engine design.")  Having previously disclosed an expert, David Engle (who was later withdrawn), to opine "that a hand brake that operates as described by Plaintiff is not efficient and therefore its use violates the Safety Appliance Act," Plaintiff implicitly acknowledges that expert testimony is needed on this subject. *See Plaintiff's First Supplemental Responses and Objections to Norfolk Southern's First Interrogatories and First Request for Production of Documents*, Int. No. 4.

7

Although Plaintiff may be experienced on the railroad, he does not have the expertise to offer reliable testimony on handbrake efficiency. To allow Plaintiff and/or his co-workers "to offer educated or uneducated guesses would be misleading to the jury rather than of assistance to it." *Rice* at 738.

## IV. Employee discipline is an issue for a Railway Labor Act or Federal Railroad Safety Act Whistleblower claim.

Defendant will take the position that any evidence of disciplinary action, or fear of disciplining action, taken or threatened against Plaintiff with respect to the incident in suit is an issue properly brought under a Railway Labor Act claim or FRSA Whistleblower claim, and not relevant to this personal injury lawsuit under the FELA. Defendant anticipates filing a motion *in limine* on this issue prior to trial.

## V. Reportability of injury to the Federal Railroad Administration.

Defendant is required to report certain on-duty employee injuries to the Federal Railroad Administration. Similarly, evidence of internal communications between Norfolk Southern management personnel discussing the reportability of Plaintiff's injury to the FRA has no bearing on the issues in this case and should be

excluded.  Defendant anticipates filing a motion *in limine* on this issue prior to trial.

**VI.    Norfolk Southern's obligation to withhold certain taxes from any judgments and the impact of a judgment on Plaintiff's railroad retirement annuity.**

<u>INTRODUCTION</u>

Federal substantive law governs all aspects of Plaintiff's claim under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., *Chesapeake & Ohio Ry. v. Kelly*, 241 U.S. 491 (1916); *St. Louis Sw. Ry. v. Dickerson*, 470 U.S. 409 (1985), as well as the parties' obligations under the Railroad Retirement Act (RRA) and Railroad Retirement Board (RRB) Regulations which impact a judgment for Plaintiff.

The purpose of this brief is to advise the Court and counsel of federal legal requirements for withholding Railroad Retirement Board and Medicare taxes from the satisfaction of any judgment for Plaintiff, the impact that an award for past and future wage loss will have on Plaintiff's Railroad Retirement Disability Annuity payments (the "Annuity"), and the well-established rule in FELA cases that a personal injury award is not subject to federal or state income tax. *Norfolk & W. Ry. Co. v. Liepelt,* 444 U.S. 490 (1980).  As a result, Plaintiff's wage loss claim is

limited to net loss which is the loss after taxes and expenses incurred in earning income are deducted. *Id.*

Plaintiff receives a monthly Annuity payment from the RRB based, in part, on prior earnings and years in service.  With certain exceptions noted below, courts have generally held that the receipt of the Annuity is not admissible.  In the event of a verdict for Plaintiff, federal law treats the wage loss portion of the judgment as creditable service income for Railroad Retirement purposes.   As a result, Defendant must report satisfaction of the judgment to the RRB and allocate the recovery of wage loss to the past period of time the employee was off work due to his alleged injury and to future months.  Defendant must also withhold Plaintiff's applicable RRB and Medicare tax obligations due on Plaintiff's judgment when satisfied and remit the taxes directly to the U.S. Treasury.[1]

In addition, federal law does not permit Plaintiff to receive Annuity payments and also receive an award for wage loss for the same period of time. This is because federal law provides that the RRB disability benefits previously

---

[1] NSRC is also required to pay its own share of taxes due on those amounts.  The NSRC share is not an offset of any award Plaintiff receives.  The tax on future lost wages is withheld up to the maximum rates in effect at the time of satisfaction and only for the year in which payment is made.

received are subject to recoupment by the RRB and future payments are subject to suspension once a judgment is satisfied which includes an award covering past or future wage loss.  It is important to note that, despite these regulations, an award to Plaintiff is not subject to federal or state income taxes.

DISCUSSION

Plaintiff's Annuity became effective February 2011 and he currently receives $3,265.96 monthly or approximately $39,191.52 annually.   The Annuity was funded by taxes collected during employment.  The railroad and its employees are subject to the Railroad Retirement Act and are required to pay Railroad Retirement taxes in lieu of Social Security taxes.  *Hance v. Norfolk S. Ry.*, 571 F.3d 511, 522 (6th Cir. 2009).  Although the tax rates have changed over the period of Plaintiff's employment, NSRC has consistently contributed the majority of the funding for Plaintiff's Annuity.  At current rates, the employee pays "Tier 1" taxes of 4.2% of an employee's compensation up to $110,100 and "Tier II" taxes of 3.9% of compensation up to $81,900.  The employer pays 6.2% of an employee's income up to $110,100 for Tier I and another 12.1% of compensation up to $81,900 for Tier II.   Additionally, the railroad and its employees each are required to pay 1.45% in Medicare taxes on the employee's earnings with no cap.  Finally, the

11

employer pays Railroad Unemployment Insurance Act (RUIA) taxes[2], which solely fund sickness benefits paid to Plaintiff for up to six months following injury. RUIA, 45 U.S.C. §351 et seq.; 20 CFR Part 345.

RRB regulations prohibit Plaintiff from recovering lost wages or pay for time lost *and* receiving an Annuity for the same time period.[3]  Plaintiff has received RUIA or Annuity payments for at least a portion of the time period for which he seeks compensation for prior lost wages.

Partly because many courts have erroneously interpreted *Eichel v. New York Central Railroad*, 375 U.S. 253 (1963) (per curiam) as categorically excluding evidence of RRB disability benefits, a judgment for Plaintiff will not reflect an

---

[2] The amount of this tax is a percentage of Plaintiff's income and is adjusted from time to time based on the employer's "experience," i.e., the amount of sickness benefits paid to the employees of that employer.  The tax is in the range of 2.15% to 3.15%.

[3] While an employee is receiving an Annuity, he or she cannot receive *any* compensation of more than $780 per month without forfeiting the Annuity.  This is one reason why so few annuitants with FELA claims obtain alternative employment or participate in vocational rehabilitation services despite their obligation to mitigate damages. *Baker v. Baltimore & Ohio Ry.*, 502 F.2d 638 (6th Cir. 1974); *Trejo v. Denver & Rio Grande W. R.R.*, 568 F.2d 181 (10th Cir. 1977); *Wilson v. Union Pac. R.R.*, 56 F.3d 1226, 1232 (10th Cir. 1995); "*Working After Retirement*", Railroad Retirement Information, U.S. Railroad Retirement Board, August 2011.

adjustment or reduction for Plaintiff's receipt of an Annuity despite the fact that the defendant has funded the vast majority of the Annuity[4].   However, once Plaintiff receives payment of a judgment, the RRA and RRB regulations prevent the employee from recovering that lost income twice, once by way of the Annuity and once by way of a court judgment, thus precluding a double recovery.[5] Satisfaction of a judgment based in any part on evidence of lost wages triggers not only the obligation of the railroad to remit the appropriate amount of RRB taxes to the U.S. Treasury for both the railroad and the Plaintiff, it also may trigger action by the RRB to recover prior Annuity payments and suspend future Annuity payments.[6]

---

[4] Defendant does not hereby seek to admit evidence of the amount of Plaintiff's annuity, nor does it seek to offset Plaintiff's annuity against any jury award. However, Plaintiff's receipt of an annuity may be admissible if Plaintiff "opens the door" to that evidence.   Additionally, under certain circumstances, receipt of an RRB annuity may be admissible if Plaintiff fails to seek employment to mitigate damages.  *Lange v. Mo. Pac. R.R.,* 703 F.2d 322.324 (8th Cir. 1983); *Santa Maria v. Metro-N. Commuter R.R.*, 81 F.3d 265 (2nd Cir. 1996); *McGrath v. Consol. Rail Corp.*, 136 F.3d 838 (1st Cir. 1998).

[5]*See* RRB Railroad Retirement Service Credit and Pay for Time Lost publication, May 2011, ¶ 5, attached.

[6] *Id.*  ¶ 2.

13

As the RRB guide, <u>Pay For Time Lost From Regular Railroad Employment</u>, Form IB-4 (06-96), explains:

The intent behind the pay for time lost concept is to treat an employee as if he or she had actually performed compensated service during an identifiable period of time.  The effect of pay for time lost upon eligibility and benefits under the RRA and the RUIA is identical to the effect of regular earnings for which service and compensation credit are received . . . The most common type of pay for time lost arises out of "on the job" personal injury . . . awards or settlements . . . .

The RRB guide goes on to conclude on p. 12:

[b]cause pay for the time lost is effectively the same as compensated service for active employment, an employee is not entitled to an annuity under the Railroad Retirement Act with respect to any months to which pay for time lost has been allocated.  For this reason, a pay for time lost allocation to an employee who is already receiving an annuity may cause an annuity overpayment.

RRB consistently follows these guidelines.  In RRB Legal Opinion, L-2010-04, the Board has stated that satisfaction of FELA judgments which include compensation for past and/or future wage loss must be reported to the Board and allocated to the period of time the employee missed work <u>and</u> to future months.

14

Additionally, the employer-railroad must withhold applicable Tier 1 and Tier II taxes and the employee's Medicare tax obligations from payment of any judgment. *See also* RRB Pay For Time Lost From Regular Railroad Employment, Form IB-4 (06-96), at 5 ("Pay for time lost is considered compensation under the Railroad Retirement Tax Act.  Thus, an employer is required to withhold and pay the employment taxes due on pay for time lost.").

Legal Opinion L-87-91, specifically dealt with an FELA jury award.  It states that Section 1(h)(2) of the RRA (45 U.S.C. § 231(h)(2)) provides that:

[A]n employee shall be deemed to be paid 'for time lost' the amount that he is paid by an employer with respect to an identifiable period of absence from active service for the employer, including absence on account of personal injury. . . .[i]f a payment is made by an employer with respect to a personal injury and includes pay for time lost, the total payment should be deemed to be paid for time lost unless there is a specific apportionment to factors other than pay for time lost.

*See also* RRB Legal Opinion L-84-22 ("The employee will forfeit any annuity which he or she received in the month in regard to which the back pay is credited. The Board will then recoup the overpaid annuities pursuant to 45 U.S.C. § 231(a), through case repayment or by withholding future annuities payable."). As a matter

15

of law, claimants are not entitled to receive both lost wages and disability annuity for the same period of time that is included in a jury award which includes compensation for time lost.

In the event that Plaintiff obtains a jury award based in part on evidence of loss of earnings, the award is "creditable compensation" or compensated service which must be allocated to those months Plaintiff was off work. RRB Legal Opinions L-2005-03 and L-92-18; *see also* 45 U.S.C. § 351(i)(1). Creditable awards of pay for time lost will cause an overpayment for the amount of benefits received during those months. *Id*. If a disability annuitant is awarded pay for time lost into the future, and the requirements for allocating pay for time lost into the future are met, future Annuity payments also are subject to suspension.

This result is not only required by federal law, but also resolves the inequity of a double recovery by the Plaintiff and is consistent with the FELA. In FELA actions, the claimant may receive full compensation for his losses, but no more. *See Norfolk & W. Ry. v. Liepelt*, 444 U.S. 490, 493-96 (1980) (requiring the jury to be instructed that any award will not be subject to state or local *income* taxes). The Supreme Court has repeatedly held that FELA economic awards are to compensate the Plaintiff for his "pecuniary damages . . . and for that only." *Mich. Cent. R. R. v.*

*Vreeland*, 227 U.S. 59, 69-72 (1913).   "The damage is limited strictly to the financial loss thus sustained."  *Am. R.R. Co. of Porto Rico v. Didricksen*, 227 U.S. 145 (1913); *see also Gulf, Colo. and Santa Fe Ry. v. McGinnis*, 228 U.S. 173, 175-176 (1913) ("the actual pecuniary loss.").

Consistent with the principle that FELA damages must be strictly limited to losses sustained, the Supreme Court has, in a variety of contexts, reversed lower court judgments where the courts' administration of the Act created a significant risk that the trier of fact would award a sum that would overcompensate the claimant.  In *Chesapeake & Ohio Railway v. Kelly*, the Supreme Court required that awards for lost prospective financial benefits be reduced to present value. "[W]ithout taking account of the earning power of the money that [was] presently . . . awarded," the Plaintiff's verdict would be greater in value than the "pecuniary benefits that would have resulted from the continued life of the deceased" and thus contrary to the purpose of damages awards under the FELA. *Id.* at 489.  Similarly, in *Kansas City Southern Railway v. Leslie,* 238 U.S. 599 (1915), the state judgment was reversed because the instructions had allowed the jury to include in the award portions of the decedent's estimated gross earnings which would not have been distributed to the beneficiaries if there had been no accident.  These principles of

damages are binding on the state courts as well as the federal courts that administer the FELA. *Liepelt,* 444 U.S. at 403.

CONCLUSION

Defendant only seeks, at this time, to advise the Court and Plaintiff's counsel of its obligation to withhold Railroad Retirement taxes and other required taxes or liens from any judgment which includes lost wages, to avoid any dispute when such taxes are withheld, and to advise the Court and counsel of the impact such a judgment may have on Plaintiff's RRB Annuity.  This obligation does not impact the collateral source rule or the holding of *Norfolk & Western Railway v. Liepelt*, 444 U.S. 490, 493-96 (1980) with respect to instructing the jury regarding the non-taxability of a jury award for income taxes purposes.

18



# Railroad Retirement Information

## U.S. Railroad Retirement Board

844 North Rush Street   Chicago, Illinois  60611-2092

www.rrb.gov
877-772-5772  general information

Public Affairs
312-751-4777  media inquiries

For Publication

May 2011

## Railroad Retirement Service
## Credits and Pay for Time Lost

The Railroad Retirement Board (RRB) frequently receives questions from railroad employers, employees, and employees' legal advisors about the RRB's treatment of pay for time lost in retirement cases. The most common type of pay for time lost situation arises out of personal injury settlements. Other types include dismissal allowances, guaranteed wages, displacement allowances paid for loss of earnings resulting from the employee being placed in a position or occupation paying less money, and reinstatement awards which include back pay.

It is important that agreements between employers and employees involving pay for time lost are structured correctly for railroad retirement purposes because they are often intended to provide an employee with additional months of creditable service needed to qualify for railroad retirement benefits. Crediting fewer service months than intended may leave an employee ineligible for benefits, while crediting an excessive number of months may delay the beginning date of those benefits. The following questions and answers describe the requirements for the crediting of pay for time lost under railroad retirement.

### 1.  How do the railroad retirement laws treat pay for time lost?

Pay for time lost attributable to lost earnings for an identifiable period of absence from active service is treated as compensation creditable under the Railroad Retirement and Railroad Unemployment Insurance Acts. Since the intent of an award for pay for time lost is to treat the employee as if he or she had actually performed compensated service during that period of time, the effect upon railroad retirement eligibility and benefits is identical to the effect of regular earnings for which service and compensation credit is received.

### 2.  What factors should be taken into account to ensure that pay for time lost will be creditable for railroad retirement purposes?

A payment must be made with respect to an identifiable period of time. The specific months during the period of absence from active service must be identified, for example "the 12-month period beginning March 2010 and ending February 2011." In the case of a payment for personal injury, the entire amount is considered pay for time lost unless, at the time of payment, the employer states that a particular amount of the payment was for other reasons. The compensation is considered earned in, and therefore creditable to, the specified period.

*(More)*

-2-

An employment relationship must exist in the months to be credited with pay for time lost. Allocation toward future months is permissible as long as an employment relation is retained for that period. If a settlement agreement requires that an employee resign to receive the payment, the employment relation ceases upon resignation. Allocation after the resignation date is not allowed because it cannot be considered time lost as an employee. With respect to pay for time lost allocated into the future, service months and compensation are not creditable until the time lost has actually elapsed.

The allocation must also relate to the actual period of absence from service for which payment is made. Pay for time lost due to personal injury may not be allocated to service months missing from an employee's record before the date of injury. Similarly, the amount of the pay for time lost must relate to an employee's normal monthly pay. A monthly allocation of at least ten times the employee's daily pay rate in effect on the date of injury is ordinarily considered a reasonable relationship to actual lost earnings. A lesser amount would be considered a token payment and would not be acceptable. For example, if an employee normally earns $130 a day, the amount of pay for time lost allocated to each month should be at least $1,300.

This calculation would not apply in the event of a Federal Employer's Liability Act (FELA) judgment. Unlike allocations in settlements, court judgments might not define the monthly amounts being awarded for time lost. In these cases, a gross amount of money is awarded to make the employee whole for the loss without concern for the actual months lost. As with settlements, the allocation may be for past or future months, assuming that the employment relation remains intact. However, absent a specific allocation amount, or a specific award amount for losses other than earnings, the RRB will consider the entire amount of damages to be pay for time lost. The period of time lost will begin with the first month lost due to the injury and end with the earlier of the months yielded by allocating 1/12 of the annual earnings maximums to each month until the dollar amount of the award is exhausted, or the date the employee relinquishes job rights. As with all other compensation payments, employers are responsible for the proper reporting of service and compensation to the RRB, as well as tax and contribution obligations under the Railroad Retirement Tax Act and Railroad Unemployment Insurance Act, respectively. Any service months and compensation credited as a result of a judgment have the same weight under the RRB's laws as service and compensation from other sources.

**3. What other factors should be considered to ensure that pay for time lost correctly provides the total of railroad retirement service months intended?**

It is of primary importance to have a precise breakdown of an employee's service prior to any allocation. As a starting point, an employee should check his or her most recent Form BA-6, or the employee may request a service and compensation statement from the RRB. This will avoid allocating pay for time lost to a month or months already reported as service months. Occasionally, an employee will have service months reported for vacation pay, or by another railroad employer--for example, by reason of paid union activity. Credit can only be received once for any given month. Because the

*(More)*

period specified is the period for which service credit is due, a month allocated to the same month already on record may result in a shortage of the total months desired.

In addition, deemed service months should not be considered in the number of total service months when an allocation period is determined if those deemed service months are within the allocation period. A pay for time lost allocation increasing service and compensation will generally eliminate or reduce the number of deemed service months on record for any affected year. Deemed service months are the product of a calculation. If the components of that calculation change as the result of an adjustment to service and compensation due to a payment for time lost, then the number of deemed service months to which an employee is entitled is likely to change.

Also, the possibility that an employee has creditable military service should be considered because such military service may not be reflected in the RRB's records and may reduce the number of allocated months needed to attain annuity eligibility. Employees are encouraged to file proof of any military service well in advance of retirement so the RRB can determine whether the military service is creditable as railroad service. The RRB will include creditable military service in its records, which will expedite the annuity application process and also ensure that the RRB's records of an employee's service are as complete as possible.

### 4. Is pay for time lost subject to railroad retirement tier I and tier II payroll taxes and/or employer contributions under the Railroad Unemployment Insurance Act?

Yes. As with all compensation, pay for time lost is subject to taxation under the Railroad Retirement Tax Act at the tier I and tier II tax rates and annual maximum earnings bases in effect when payment is made. Pay for time lost is not, however, creditable on the basis of when the payment is made, but to the period for which the payment is allocated. Therefore, the taxable amount and creditable amount will sometimes differ. The employee's portion of the railroad retirement tax liability is usually withheld from the gross amount of the award.

Unlike tier I and tier II taxes, the amount of the employer contributions due under the Railroad Unemployment Insurance Act is computed at the rates in effect, subject to a monthly limit, during the months to which the payment is allocated.

### 5. What effect would pay for time lost have on the payment of a railroad retirement annuity or unemployment or sickness benefits for the same days?

Because pay for time lost is considered earned in the month allocated, an employee is not entitled to an annuity under the Railroad Retirement Act with respect to any months to which pay for time lost has been allocated. If an employee applies for retirement benefits at the expiration of an allocation period, he or she should submit documentation of the period covered by the agreement with the application.

Similarly, an employee is not entitled to unemployment or sickness benefits under the Railroad Unemployment Insurance Act with respect to any months to which pay for time lost has been allocated. If a payment for time lost is made which covers a period for which benefits under the

*(More)*

-4-

Railroad Unemployment Insurance Act were previously paid, the benefits would be subject to recovery.

### 6.  Where can someone get more information about pay for time lost?

Additional information on pay for time lost, as well as other railroad retirement topics, is available on the RRB's website at www.rrb.gov.  In addition, specific questions can be directed to the Railroad Retirement Board's Quality Reporting Service Center, 844 North Rush Street, Chicago, Illinois 60611-2092.  Their phone number is (312) 751-4992.

# # #

## ATTACHMENT "I-1"

*Plaintiffs's Proposed Verdict Form*

1.     Was Plaintiff injured, in whole or in part, by Defendant's use of a rail car in violation of the Safety Appliance Act or a Federal Safety Regulation, as I have described those laws to you?

YES: _____ or          NO: _____


2.     If you answered YES to Question Number One, what amount of money is necessary to compensate the Plaintiff for lost wages and benefits and pain and suffering?

_____

SO SAY WE ALL.

This _____ day of _____, 2012.

_____          _____
Foreperson's Signature                            Printed Name

1

## <u>ATTACHMENT "I-2"</u>

*Defendant's Proposed Special Verdict Form*

1.     Do you find from a preponderance of the evidence that the Defendant, Norfolk Southern Railway Company, violated the Safety Appliance Act on July 23, 2009?

Yes: _____ or          No: _____

If you answered "No" to Question No. 1, your verdict is for the Defendant, and you need to do nothing further.  Simply have your foreperson sign and date the verdict form.

If you answered "Yes" to Question No. 1, then proceed to Question No. 2.

2.     Do you find from a preponderance of the evidence that Plaintiff Connie Strickland was negligent and that such negligence was the sole cause of damage to the Plaintiff?

Yes: _____ or          No: _____

If you answered "Yes" to Question No. 2, your verdict is for the Defendant, and you need to do nothing further.  Simply have your foreperson sign and date the verdict form.

1

If you answered "No" to Question No. 2, then proceed to Question No. 3.

3.      Do you find from a preponderance of the evidence that any such violation of the Safety Appliance Act by the Defendant Norfolk Southern Railway Company a legal cause of an injury to the Plaintiff?

Yes: _____ or           No: _____

If you answered "Yes" to Question No. 3, then proceed to Question No. 4.

If you answered "No" to Question No. 3, your verdict is for the Defendant, and you need to do nothing further.  Simply have your foreperson sign and date the verdict form.

4.      If you answered "Yes" to Question No. 3, what sum of money do you find from a preponderance of the evidence to be the total amount of the Plaintiff's damages?                                          $_____.

SO SAY WE ALL.

This _____ day of _____, 2012.

_____          _____
Foreperson's Signature                      Printed Name